UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL JONES

Plaintiff                          Civil Action No.

V.

BANK OF NEW YORK TRUSTEE FOR THE CERTIFICATE HOLDERS
CWABS, INC, ASSET- BACKED CERTIFICATE , SERIES 2004-7
SANDRA ROBINSON
SELECT PORTFOLIO SERVICING INC
Defendants



## FIRST AMENDED VERIFIED COMPLAINT

1. This is an action brought by plaintiff Paul Jones against defendant The Bank of New York
Trustee , for wrongful foreclosure of his home. The foreclosure of plaintiff's home is void as it
violated the statutory power of sale for three reasons: (1) because the notice of default and
acceleration was sent by the servicer, not the defendant BNY whom claims to be the Lender as
required by the terms of the mortgage. The SJC stated and explained the new rule's application
'to mortgage foreclosure sales of properties that are the subject of a mortgage containing
paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is
sent after July 17, 2015 (Date of Pinti case commencement of the statute.) as in this case
defendant SPS the servicer not the holder of the mortgage send the default notice ,Acceleration
and cannot get around it. The servicer (SPS) not the defendant BNY (So called Lender) whom
claims to be the Lender as required by the terms of the mortgage section 22

1

(2) because no notice of the foreclosure was sent to the Town of Stoughton by defendant BNY within 30 days, as required G.L.c.244, § 15A (3) because the notary failed to keep a notary log of records that contained the date of each instrument notarized with the names of signors, grantors or makers, the name and mailing address of the grantee, the name of the original grantee and the county where the land is located"; "and a brief description of the instrument". As required by the Texas Government Notary Public Act Sec. 406.014. (4) Defendants were not in possession of the mortgage & note at the time they made the Confirmatory of assignment of mortgage dated October 28 2008 or the assignment dated February 25, 2008, The SJC has stated "In Massachusetts, a "confirmatory assignment" of a mortgage is a written document that may be executed and recorded after the foreclosure of the mortgaged property when the written assignment of the mortgage was executed before the foreclosure but was not in recordable form" the confirmatory assignment that defendants relies on was not was not recorded after the foreclosure at issue the SJC uses the word "AND". (5) The notary of the controlling assignment that has a Confirmatory assignment confirming it was altered by a person (Tiffany Skaife) that is not and was not at the time the assignment was made so said by the notary of that assignment Sandra Robinson and section were left blank by the notary. (6) Defendants confirmatory assignment did not take place after the foreclosure the SJC stated that "If a valid pre-foreclosure assignment took place, a "confirmatory assignment may be executed and recorded after the foreclosure and doing so will not make the title defective." (7) Defendants do not have a written assignment of the Note only the mortgage.

## PARTIES

2. Plaintiff Paul Jones ("Plaintiff) is a natural person residing in Stoughton, Massachusetts, Norfolk County.

3. Defendant  Bank of New York Trustee for the Certificate Holder CWABS,INC, Asset-Backed Certificate, Series 2004-7 (BNY) is a Delaware Corporation and has a usual place of business at 101 Barclays Street New York, NY 10286

4. Defendant Select Portfolio Servicing, Inc. ('SPS") is a residential loan servicing company with headquarters located at 3217 S. Decker Lake Drive, Salt Lake City, Utah 84119.

5. Sandra J. Robinson (" Sandra") is a natural person residing in Aubrey, Texas, Denton County an ex-employee of Countrywide/ Bank of America and a previous Notary for the state of Texas.

## JURISDICTION

6.   This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

7. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) in as much as the challenged actions are alleged to have been committed in this District, all Defendants regularly conduct business in this District, and the named Plaintiff reside in this District.

8. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

9.   Jurisdiction of this Court arises under complete diversity between the parties to a lawsuit exceeds the sum or value of $75,000 jurisdiction under 28 U.S.C. § 1332(a)(1).

FACTS

10. All conditions precedent to the bringing of this action has been performed, the amount in controversy exceeds $75,000 in this complaint.

11. Plaintiff's states as an initial matter that due to the extremely complicated subject matter attendant to this area of the law, it is extremely difficult (if not impossible) to not be somewhat verbose, as the "securitization" of mortgages and foreclosure is about as unfathomably deep as a subject can get, and the Plaintiff's apologies in advance for the extent of this complaint.

12. Plaintiff resides at the property at issue, 572 Park Street, Stoughton, Ma 02072.

13. Plaintiff acquired the home in 2002 under a deed recorded in the Norfolk, County registry of deeds at book 16766, page 1.

14. On June 22, 2004, Plaintiff refinanced and entered into a loan arrangement with Optima Mortgage Corporation as the "originator" (this Mortgage was one insured by the FHA) , through the execution of a purported promissory note made payable specifically to Optima Mortgage Corp in the amount of  $275,550.00 under Massachusetts state law, the contractual right to enforce the power of sale in his mortgage.

15. The loan was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc as nominee for Optima Mortgage Corporation, as nominee for Optima Mortgage Corporation the mortgage is recorded at the Norfolk, County Registry of deeds at book 22224 page 219.

16. Due to the loss of income from plaintiffs Home Improvement Company plaintiff fell behind in his mortgage payments.

17. on August 2, 2005 Countrywide Home Loan Servicer LP sent plaintiff a deficient notice of acceleration of mortgage / notice of default (they were not the Lenders), Countrywide August 2, 2005 notice of default did not strictly comply with paragraph 22 of the mortgage, as required

4

under the statutory power of sale and under the Massachusetts Supreme Judicial Court's ("SJC") case law.

18. The date of August 2, 2005 Countrywide's notice of default to Plaintiff, Optima Mortgage Corporation was the lender and Countrywide Home Loan Servicer LP was the servicer of the loan.

19. On or about November 6, 2006, BNY filed a complaint with the Massachusetts Land Court complaint. In that complaint, BNY alleged that where the Lender and holder of plaintiff mortgage which was false.

20. Plaintiff filed a Chapter 13 petition on February 7, 2007 due to his loss of income and the unlawful December 7, 2007 foreclosure sale of his home.

21. On May 17, 2007 In the Bankruptcy Court, Countrywide Home Loans, Inc. filed a motion for relief from stay ('MFRS") claiming to be the present holder of plaintiffs Mortgage, plaintiff attorney successfully argued that Court, Countrywide Home Loans, Inc was not the owner of record and did not have a valid assignment attached to their MFRS, and that defendant BNY claimed to be the owner of record (Lender) on November 6, 2016 when BNY filed a Servicemembers Civil Relief Act, Complaint to foreclose (SCRA) complaint to foreclose in the Massachusetts Land Court, Countrywide Home Loans conceded and dismissed there Motion from relief from stay.

22. On August 8, 2007 In the Bankruptcy Court defendant BNY filed a motion for relief from stay and attached a mortgage assignment that was undated but notarized on November 20, 2006, from MERS as nominee of Optima Mortgage Corporation to Bank of New York as Trustee for Certificate Holders, CWABS, Inc., Asset-Based Certificates, Series 2004-7, claiming that defendant MERS assigned the mortgage & Note to BNY.

5

23. Plaintiffs' attorney pointed out that this assignment was notarized 14 days after defendant filed their Complaint to foreclose in the land court (Exhibit 3), plaintiff ran out of money and the MFRS was unopposed.

24. On December 3,2007 defendants foreclosed on plaintiff's property without sending plaintiff a default and acceleration notice, they relied upon Countrywide's August 2, 2005 notice of default and acceleration notice to plaintiff which was contrary to statutory power of sale G.L.c 183 § 21.

25. On or about January 2008 defendants BNY filed several summary processes in the Stoughton district court, the judge ordered BNY on each occasion to produce evidenced that they had a valid assignment of mortgage before they filed the complaint to foreclose in the Land Court and ultimately foreclosed on plaintiffs' home.

26. One or about March 13 , 2008 the defendants own attorney conceded in Stoughton District court that, all three Summary process complaints alleged no notice of default / acceleration came from the claimed Lender BNY to the plaintiff and that defendant BNY relied on 4 assignments, 2 which were in blank, one assignment undated but notarized on November 20, 2006, 14 days after BNY filed a Complaint to foreclose in the Land court and a 4th assignment dated October 10, 2006 and notarized on January 25, 2008, which was otherwise an identical assignment from MERS as nominee of Optima Mortgage Corporation to Bank of New York as Trustee for Certificate Holders, CWABS, Inc., Asset-Based Certificates, Series 2004-7. It was recorded February 25, 2008, before BNY's foreclosure deed to itself. The notary's handwritten revision of the prepared notarization date from October 10, 2006 to January 25, 2008 (Back dated) was worthy of note, judge Karen White dismissed the Summary processes with prejudice (Exhibit 7 Court Transcript).

27. One or about the Fifth assignment purports to be a confirmatory assignment, it purportedly confirms the Fourth assignment that was recorded in the Norfolk Registry of deeds on February 25,2008 Book 25529 Page 356 from MERS on behalf of Option One dated October 10, 2006.

28. The SJC and Massachusetts controlling case law has long held that a confirmatory assignment, however, cannot confirm an assignment that was not validly made earlier *or* backdate an assignment being made for the first time, if a lender records a true confirmatory assignment, it must do much better than simply state an effective date.

29. On Jul 31, 2019 BNY attorneys in their supporting memorandum to dismiss a FDCPA claim BNY has stated in this federal district court and in the Stoughton District court Summary process on or about May 9 2019 & February 26, 2019 that they have rescinded the December 2007 foreclosure and it is irrelevant, plaintiff relied on these documents and statements to frame this complaint.

30. On or about April 26, 2017 Select Portfolio Servicing Inc ("SPS") sent plaintiff a notice of default / acceleration on September 11, 2018 and they were not the lenders and caused an affidavit to these facts to be recorded in the Norfolk Registry of deed Book 36285 page 536.

31. Bank of NY did not demonstrate a simple chain of title that well established its record ownership of the mortgage

32. These assignments never could have taken place under BNY own rules of their own PSA, Massachusetts controlling caselaw states that MERS cannot transfer a note, plaintiffs contend that MERS cannot assign the note because MERS never held the note.

33. MERS was never in possession of the note to transfer it to defendant BNY, BNY has no "substantive right to enforce the note and mortgage as a holder through MERS transfer of

plaintiff note, plaintiff request a declaration that the transfer of the note to BNY is void and or voidable under Massachusetts Law as defendant BNY did not have substantive right to enforce plaintiffs note under either assignment when MERS reportedly transferred plaintiffs Note with the mortgage.

34. More to the point a mortgagee must have a valid claim to the debt before attempting foreclosure, MERS' own Terms and Conditions of Membership published on MERS, Inc website at www.mersinc.org states MERS, Inc further indicates that it does not ever have beneficial interest in mortgage notes. It states, "that it has no rights whatsoever for creating or transferring beneficial interest in the mortgage loans. MERS specifically states in Defining the Mortgage Electronic Registration System, once in the MERS System, MERS becomes the Mortgagee of record for its members, but the original lender or subsequent party who purchased the note retains physical possession of the note.

35. A lender does not have standing to commence a foreclosure action when the lender's assignor was listed in the underlying mortgage instruments as a nominee and mortgagee for the purpose of recording, but never actually held the underlying notes

36. Plaintiff challenges the 2018 foreclosure sale due to invalid assignments this is a concrete and particularized injury in facts under Spokeo, a causal connection that permits tracing the claimed injury to the defendant's BNY actions, and Plaintiff has a likelihood that prevailing in the action will afford some redress for the injury.

37. Defendant BNY did not posse the promissory note underlying the mortgage when the foreclosures occurred on or about April 9, 2018.

8

38. The relevant documents appear to have *not* been created in accordance with MERS practices for authorizing and assigning only mortgages. MERS has no substantive rights itself to plaintiffs Note, and, therefore, cannot assign what it did not have.

39. In addition, there is no evidence of proper Chain of Title of the Mortgage or the Note from the Original Lender to the Trustee. The Note has no endorsements on it showing it was ever transferred to any other entity.

40. The controlling assignments the defendant BNY relies on was notarized by Sandra J. Robinson in Texas she did not keep a notary log of records of the date of each instrument notarized";, "the name of the signer, grantor, or maker";, "the name and mailing address of the grantee";, "if land is conveyed or charged by the instrument", "the name of the original grantee and the county where the land is located"; "and a brief description of the instrument". As required by the Texas Government Notary Public Act Sec. 406.014.

41. Entries in the notary's book are public information under the above Texas Notary Act, Sandra J. Robison was unable to provide plaintiff with a certified copy of the record of her official acts notarizing the assignments at issue that defendants BNY relied on to conduct the foreclosure on plaintiff's home. (Exhibit  ), as required by Sec. 406.014(c) of the Texas Government Notary Public Act which states "A notary public shall, on payment of all fees, provide a certified copy of any record of official acts in the notary public's book of record to any person requesting the copy" this made the Notarization on the assignments Void.

42. Also when Sandra J. Robinson the notary signed and sealed the assignment in question, she left boxes blank which is contrary to Sec. 406.014(c)

43. Notarize documents such as assignments must be according to law and these legal documents cannot contain blank spaces or boxes, assignments are void and cannot be used to foreclose on plaintiff property.

44. On October 30, 2012 Sandra J. Robinson informed a local Texas Investigator / Process Server William N. Albright that she worked for Countrywide Mortgage / Bank of America along with Tiffany Skaife, Sandra Robinson state while at Countrywide Mortgage / Bank of America she never kept a notary log of documents she signed or notarized it would have been too difficult (Exhibit  Affidavit of William N. Albright).

45. Sandra J. Robinson also stated that Tiffany Skaife crossed out the date on the assignment and added the date of 01/25/08, she iterated that she makes her #8 with to circles not the way the 8 was draw it was not her handwriting (Exhibit William Albright Affidavit).

46. At that time William N. Albright asked Sandra if she was in fact ever an employee of Countrywide / Bank of America and she admitted that she was a bonified employee of Countrywide / Bank of America during 2008 and prior to Sandra Robinson stated according to his affidavit.

47. Sandra Robinson stated that she made no effort to keep a notary log of each document she notarized .

48. Sandra Robinson stated that if it was ever repeated to someone, she would deny ever saying it.

49. William N. Albright showed Sandra Robinson a copy of the mortgage assignment dated January 25, 2008.

50. Sandra Robinson stated the Tiffany Skaife changed the date of the document whom is not a notary public in Texas or Massachusetts on January 25,2008.

51. Sandra Robinson stated specifically that that the way the number "8" was made on the assignment was not typically of how she (Sandra) would make the numeral "9".

52. Sandra Robinson stated she would have made it with two circles on top of each other not the way it was drawn, she reiterated several times that she did not change the date, the way the date is written is not her handwriting.

53. Sandra Robinson stated that Tiffany Skaife worked directly in back of her at countrywide mortgage., Sandra stated that the assignment came from Countrywide Mortgage

54. Sandra Robinson stated that Tiffany Skaife would often hand her as many as Five documents at a time for her to notarize, and she would Notarize them without looking at them or filling out a Notary log.

55. Entries in the notary's book are public information under the above Texas Notary Act, Sandra J. Robison was unable to provide plaintiff with a certified copy of the record of her official acts notarizing the assignments at issue that defendants BNY relied on to conduct the foreclosure on plaintiff's home. (Exhibit ), as required by Sec. 406.014(c) of the Texas Government Notary Public Act which states "A notary public shall, on payment of all fees, provide a certified copy of any record of official acts in the notary public's book of record to any person requesting the copy" this made the Notarization on the assignments Void.

56. Also when Sandra J. Robinson the notary signed and sealed the assignment in question, she left boxes blank which is contrary to Sec. 406.014(c)

57. Notarize documents such as assignments must be according to law and these legal documents cannot contain blank spaces or boxes, assignments are void and cannot be used to foreclose on plaintiff property.

58. The third & Fourth assignment of Mortgage transferred by MERS as Nominee for Optima Mortgage Corporation in the witness whereof statement, the date is missing, the names are stamped in block letters, boxes are left blank, the date the notary signed it first had 10/10/06, that date was crossed out and 01/25/08 was written in and notarized on January 25,2018 by Sandra J. Robinson.

59. Sandra J. Robinson informed a local Texas Investigator / Process Server William N. Albright that she worked for Countrywide Mortgage / Bank of America along with Tiffany Skaife, Sandra Robinson state while at Countrywide Mortgage / Bank of America she never kept a notary log of documents she signed or notarized it would have been too difficult (Exhibit 7 Affidavit of William N. Albright).

60. Sandra J. Robinson also stated that Tiffany Skaife crossed out the date on the fourth assignment and added the date of 01/25/08, she iterated that she makes her #8 with to circles not the way the 8 was draw it was not her handwriting (Exhibit William Albright Affidavit).

61. Defendants Assignment and Confirmatory Assignment of Mortgage is not consistent with the Supreme Judicial Court of Massachusetts' decision in *Ibáñez and is void on its face*.

62. The SJC has also stated that the defendants BNY would have to hold both the mortgage and the note in order to foreclose which they did not the Note is made out to Bank of America not the defendants BNY.

63. The foreclosure in this case took place after the SJC issued *Eaton v. Fed. Nat'l Mort. Ass'n,* 462 Mass. 569, 969 N.E.2d 1118 (2012), where the court "construe[d] the term ["mortgagee"] to refer to the person or entity ... holding the mortgage [at the time the foreclosure initiates] and also either holding the mortgage note or acting on behalf of the note holder. Before *Eaton,* it was understood that the mortgagee seeking to execute only had to possess the mortgage to

12

initiate the procedures. The SJC expressly made that ruling prospective, the defendants did not

both the note and the mortgage, at the time they foreclosed.

64. Plaintiff is neither a party to nor a third-party beneficiary of the Pooling & Service Agreement

plaintiff alleges enough facts to set forth a plausible claim for violations of Section 14 under

this theory.

65. Plaintiff is questioning whether legal binding assignment and confirmatory assignment took

place before the foreclosure began, as Section 14 requires which it did not.

66. Plaintiff questions whether the entity that foreclosed on his property actually had the power of

sale at the time the foreclosure took place. It is, therefore, not a question of the validity of the

assignment under the PSA, but a question of the timing of the assignment in relation to the

initiation of the foreclosure proceedings.

67. The defendants (BNY) in this case did not hold the mortgage and or Note at the time they

foreclosed and, therefore, had no right to exercise the power of sale under Section 14.

68. The recorded Confirmatory assignment was dated and notarized on October 21, 2008, and the

Assignment of mortgage dated February 25, 2008  this assignment also it states the MERS

assigns the Mortgage and the Note."MERS, as nominee for Lender and lender's successors

and assigns", A nominee of the owner of a note and mortgage may not effectively assign the

note and mortgage to another for want of an ownership interest in said note and mortgage by

the nominee.

69. In which the MERS system is structured provides that, "[w]hen the beneficial interest in a

loan is sold, the promissory note is transferred by an endorsement and delivery from the buyer

to the seller , but MERS Members are obligated to update the MERS(r) System to reflect the

change in ownership of the promissory note. However, there is nothing to prove that the Note in this case was transferred other than a Note that was transferred to Bank of America in 2013.

70.  What is undisputed is that MERS did not have any rights with respect to the Note, a nominee (MERS) of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.

71.  MERS's "nominee" status and the mortgage note documents doesn't give MERS authority to assign (nominee is "`[a] person designated to act in place of another, usually in a very limited way.'") (quoting Black's Law Dictionary)).

72.  While the assignments purports to assign both the mortgage and the note, MERS, which is a registry system that tracks the beneficial ownership and servicing of mortgages, MERS was never the holder of the note, and therefore lacked the right to assign it. While MERS was the mortgagee of record, it was acting only as nominee, its successors and assigns. MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record. To be effective, therefore, an allonge must be affixed to a promissory note which it is not see Exhibit

73.  Assignment of Mortgage was by MERS, *as nominee for Optima Mortgage,* the original lender. at the time the assignment was effectuated, Optima mortgage no longer held any interest in the Note according to the defendants Pooling and Service Agreement. Which the note and mortgage was transferred to on or about September 28, 2004, but the defendants have produced a note that was purchased by Bank of America on or about 2013.

74.  The purported allonge is not affixed to the note, then despite having possession of the note, BNY lacks the status of "holder" as defined by UCC § 1-201(20).

75. In the rush to originate and assign as many mortgages as possible, and in the face of an over whelming volume of foreclosures to be processed, mortgagees and their assignees often failed to assign the mortgages properly and, in some instances, committed fraud or other unauthorized acts in order to correct the assignment paper trail.

76. If a judicial system intends to treat debtors as being responsible for complying with the terms of the mortgage contract itself, it would be reasonable to expect that system to demand that the other parties to the contract abide by similar formalism.

77. Courts should not permit the defendants, mortgagees and their assignees to subvert, supplant, and circumvent the very formalities that they utilize to foreclose upon the debtors.

78. The controlling assignment is not valid, and the defendants is demanding that the defendants , assignee prove that the January 28, 2008 assignment is valid.

79. The defendants, assignee never had good legal title to plaintiff's property the assignment is invalidly assigned, voidable, Void and entirely ineffective.


## COUNT 1
## VIOLATION OF THE MORTGAGE POWER OF SALE
### G.L.c 183, § 21
### ALL DEFENDANTS

80. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and realleged here.

81. Massachusetts permits non-judicial foreclosure under the statutory power of sale contained in G.L.c 183, § 21, Section 21. The following "power" shall be known as the "Statutory Power of Sale", and may be incorporated in any mortgage by reference:

(POWEROF SALE)

15

82. But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

83. The Supreme Judicial Court has held that a mortgagee must strictly comply with the terms of the power of sale. U.S Bank Nat'l Ass'n. v. Ibanez, 458 Mass. 637, 646 (2011) ("[0]ne who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void.") (quoting Moore v. Dick, 187 Mass. 207, 211 (1905), See Roche v.Farnsworth, 106 Mass. 509, 513 (1871) (power of sale contained in mortgage "must be executed in strict compliance with its terms .

84. Under the terms of plaintiff's mortgage, the "lender" must send a notice of default advising plaintiff of certain facts before the mortgage may be accelerated.

85. The servicer of plaintiff's mortgage SPS sent a notice of default on September 11, 2018 and caused an affidavit to these facts to be recorded in the Norfolk Registry of deed Book 36285 page 536 .

86. At the time the notice of default was sent SPS was not the lender of the mortgage. Rather defendant BNY was the claimed lender pursuant to an assignment of mortgage filed in the Norfolk Registry of Deeds Book 25529 page 356.

87. Therefore the notice of default was deficient, and the power of sale was not complied with prior to foreclosure. The April 2018 foreclosure is therefore void.

Wherefore: Plaintiff ask the court to grant attorney fee, damages, trebled damages, statutory damages, fees & Cost, void of foreclosure injunctive relief and whatever court deems appropriate.

COUNT 2
VIOLATION OF G.L. c 244 § 15A
DEFENDANTS BNY

88. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and realleged here.

89. The statues related to foreclosures under G.L.c 183, § 21, are contained at G.L.c 244 §§ 11-17C.

90. Failure to comply with any of these requirements voids a foreclosure sale .As set out in Schumacher, a mortgagee's failure to adhere to the requirements under the power of sale, including G.L. c. 244, § 15A, will void a foreclosure sale. Schumacher, 467 Mass. 421 at 432. "Where a [homeowner] claims that the mortgage holder failed strictly to adhere to the requirements under the statutory power of sale set forth in G.L. c. 183, § 21, and the related requirements in G.L. c. 244, §§ 11–17C, proof of any violation of these requirements will void the foreclosure sale . . . ." Id. (Gants J., concurring). Additionally, in Bank of N.Y. v. Bailey, 360 Mass. 327, 335 (2011), the Court overturned a motion for summary judgment and voided a foreclosure when the mortgagee did not strictly comply with G.L. c. 244, § 15.

17

91. Under G.L.c 244 15A, part of the power of sale, a mortgagee must notify the city tax assessor or collector of the foreclosure within 30 days.

> Section 15A. A mortgagee taking possession of mortgaged premises prior to foreclosure or a mortgagee conveying title to mortgaged premises pursuant to the provisions of this chapter shall, within thirty days of taking possession or conveying title, notify all residential tenants of said premises, and the office of the assessor or collector of taxes of the municipality in which the premises are located and any persons, companies, districts, commissions or other entities of any kind which provide water or sewer service to the premises, of said taking possession or conveying title.

92. BNY did not notify the city tax assessor, collector or the Town of Stoughton within 30 days of the foreclosure.

The Defendant BNY did not make the required notification to the Town of Stoughton until more than 4 months after the April 2018 foreclosure sale which was on or about September 11, 2018 (Exhibit ), this record is a true copy of the property record card published by the Town of Stoughton and obtained by the plaintiff.

93. Defendants BNY failed to notify the Town of Stoughton of the transfer violated G.L.c 244 § 15A.

94. As a result, BNY did not strictly adhere to the foreclosure requirements under the statutory power of sale. The foreclosure is therefore void.

Wherefore: Plaintiff ask the court to grant attorney fee, damages, trebled damages, statutory damages, fees & Cost, void of foreclosure injunctive relief and whatever court deems appropriate.

## COUNT 3

### Unfair & Deceptive Trade Practice Act MGL 93a

95. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and realleged here.

96. Defendants SPS and BNY failed to send plaintiff a Notice of default / acceleration which complied with The mortgage of power of sale.

97. Defendants failed to comply with MGL c 244 with taking steps to make a good faith effort to avoid foreclosure.

98. Defendants BNY failed to inform assessor office since 2008 that they were the new owners due to multiple foreclosure sales: . A mortgagee taking possession of mortgaged premises prior to foreclosure or a mortgagee conveying title to mortgaged premises pursuant to the provisions of this chapter shall, within thirty days of taking possession or conveying title, notify all residential tenants of said premises, and the office of the assessor or collector of taxes of the municipality in which the premises are located and any persons, companies, districts, commissions or other entities of any kind which provide water or sewer service to the premises, of said taking possession or conveying title.

99. Defendant Sandra Robinson allowed Tiffany Skaife to fill in a mortgage assignment when she was not a notary.

100. Defendant Sandra Robinson did not keep a log of plaintiff assignment under Texas notary rules.

101. Defendant Sandra Robinson admitted that she could not give the plaintiff a certified copy of the assignment or her ledger and that she did not have a copy to provide plaintiff with.

102. Defendants BNY did not have an actual valid mortgage assignment or a Note (Both) assigned to them before they started foreclosing on plaintiff or sold plaintiffs home.

Wherefore: Plaintiff ask the court to grant attorney fee, triple damages, trebled damages, statutory damages, fees & Cost injunctive relief and whatever court deems appropriate.

COUNT 4

VIOLATION OF SECTION 19 of THE MORTGAGE

*(PINTI & THOMPSON VIOLATION)* (SPS & BNY)

103.  Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and realleged here.

104. The notices that defendant SPS did not comply with paragraph 19 because it didn't say anything about the five-day deadline. Instead, the letter advised the borrowers that they could reinstate "before" the foreclosure sale, which implied that a reinstatement payment given *fewer* than five days before the sale would reinstate the loan, The notice did not fully inform the borrowers about the five-day deadline to reinstate the loan, the breach letter was deceptive. The court ultimately found that the letter was not in strict compliance with the terms of the mortgage nor Massachusetts law, See *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, 33 N.E.3d 1213, 1220–21 (2015))

Wherefore: Plaintiff ask the court to grant attorney fee, damages, trebled damages, statutory damages, fees & Cost injunctive relief , Void foreclosure and whatever court deems appropriate.

20

PLAINTIFF DEMANDS A JURY TRIAL

Respectfully Submitted July 22, 2020
Paul Jones
572 Park Street
Stoughton, Ma 02072
617-939-5417
Pj22765@gmail.com

# EXHIBIT 1
# NOTE

06-Mar-2013 02:13 PM Bank of America 213-345-1002                                    2/8

Min:  2547-    0006-3                      Loan Number:         0008

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
**(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT.  THIS NOTE LIMITS THE AMOUNT MY
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

JUNE 22, 2004                     TUSTIN              CALIFORNIA
[Date]                            [City]              [State]

572 PARK STREET, STOUGHTON, MASSACHUSETTS 02072
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $274,550.00          (this amount is
called "Principal"), plus interest, to the order of the Lender. The Lender is OPTIMA MORTGAGE
CORPORATION, A CALIFORNIA CORPORATION                                        .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer
and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of        7.450 %.  The interest rate I will pay will change in accordance with Section 4 of this
Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st   day of each month beginning on AUGUST 1
2004        .  I will make these payments every month until I have paid all of the principal and interest and
any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its
scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2034
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  15941 REDHILL AVENUE SUITE #100,
TUSTIN, CALIFORNIA 92780

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,910.30          . This
amount may change.

Borrower Initials: _____

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index               DocMagic €Farmu·
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                            Page 1 t

610        1592  N   001   001

05-Mar-2013 02:13 PM Bank of America 213-345-1002                                   3/8

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st    day of JULY, 2006                  , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  SIX AND 950/1000              percentage point(s) (   6.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than        8.950 % or less than    6.950 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 500/1000                              percentage point(s) (    1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than     14.450 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY    ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

Borrower Initials: _____

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family—Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                   Page 2 of 5

DocMagic                   800-549-1362
www.docmagic.com

 

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 1.5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered to me by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

Borrower Initials:

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family—Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                           Page 3 of 5

DocMagic eForms 800-649-1362
www.docmagic.com

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials: P. J.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                    Page 4 of 5

DocMagic CForms 800-649-1362
www.docmagic.com

05-Mar-2013 02:13 PM Bank of America 213-345-1002                                                        6/8

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
PAUL   JONES              -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                 -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family—Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                          Page 5 of 5

DocMagic *eForms* 800-649-1342
www.docmagic.com

## ALLONGE TO NOTE

LOAN NUMBER: 0640520008
LOAN AMOUNT: $274,550.00
PROPERTY ADDRESS: 572 PARK STREET, STOUGHTON, MASSACHUSETTS 02072

ALLONGE TO NOTE DATED JUNE 22, 2004

IN FAVOR OF OPTIMA MORTGAGE CORPORATION

AND EXECUTED BY PAUL JONES

PAY TO THE ORDER OF:
COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.

WITHOUT RECOURSE OPTIMA MORTGAGE CORPORATION

BY

TITLE:     Karen Hellmich
           V.P. of Operations

ALLONGE TO NOTE
05/06/04

PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE

COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA

BY_____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF

_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY_____
David A. Spector
Managing Director

A'b' oL Obeuorⁱ·⁻
preon pionⁱⁱⁱ

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ████0008

Date: JUNE 22, 2004

Borrower(s): PAUL JONES

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 22nd day of JUNE, 2004 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of OPTIMA MORTGAGE CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If I make a full Prepayment of the Note before the date fixed for payment, I will at the same time pay a Prepayment charge equal to the balance of the first year's interest or three (3) months' interest, whichever is less; provided, however, that if I make a full Prepayment within TWENTY-FOUR ( 24 ) months from the date of the Note for the purpose of refinancing with another financial institution, I will pay an additional Prepayment charge equal to three (3) months' interest.

610 ████ 1592 PPP 001 001

MASSACHUSETTS PREPAYMENT ADDENDUM TO NOTE
6/03                                              Page 1 of 2

DocMagic €€€❁✦❁❁❁ 800-649-1362
www.docmagic.com

P. J.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_Paul Jones_   6/22/04
Borrower PAUL JONES     Date        Borrower              Date

Borrower            Date        Borrower              Date

Borrower            Date        Borrower              Date

MASSACHUSETTS PREPAYMENT ADDENDUM TO NOTE
6/03                   Page 2 of 2.             DocMagic ℰℱℴℛℳℜ 800-649-1362
www.docmagic.com

# EXHIBIT 2

William N. Albright affidavit for
Notary Sandra Robinson

**INVESTIGATIVE RESEARCH ASSOCIATES**
**P.O. BOX 832947**
**RICHARDSON, TX   75083-2947**
**972-889-3333**
**972-889-3338 (FAX)**

AFFIDAVIT OF WILLIAM N. ALBRIGHT

MY NAME IS WILLIAM N. ALBRIGHT. I AM OVER THE AGE OF 18 YEARS AND
CAPABLE OF MAKING THIS AFFIDAVIT. I AM THE OWNER AND MANAGER OF
INVESTIGATIVE RESEARCH ASSOCIATES, P.O. BOX 832947, RICHARDSON,
TEXAS 75083.

ON OCTOBER 30, 2012, I RECEIVED LEGAL COURT DOCUMENTS TO BE
SERVED TO SANDRA J. ROBINSON. I PERSONALLY DELIVERED THESE
PAPERS, ON BEHALF OF MY CLIENT, PAUL JONES, TO MS. ROBINSON AT
HER RESIDENCE OF 2390 FM 455, AUBREY, TX, 76227, ON 11-1-12, AT
APPROXIMATELY 7:30 P.M.  MS. ROBINSON ACCEPTED THE DOCUMENTS
WITHOUT INCIDENT, AND WAS FRIENDLY AND COOPERATIVE DURING OUR
INTERACTION AND CONVERSATION WITH HER.

ONCE THE DOCUMENTS WERE DELIVERED TO MS. ROBINSON, WE TALKED
ABOUT HER EXPERIENCE AT COUNTRYWIDE/BANK OF AMERICA.  SHE
ACKNOWLEDGED THAT SHE DID WORK FOR COUNTRYWIDE MORTGAGE/BANK OF
AMERICA, DURING 2008, AND PRIOR TO THIS TIME.  SHE WAS A BONIFIED
EMPLOYEE FOR COUNTRYWIDE MORTGAGE/BANK OF AMERICA, AND NOTARIZED
LOTS OF DOCUMENTS, SOMETIMES AS MANY AS 200 PER DAY.

WHILE AT COUNTRYWIDE/BANK OF AMERICA, MS. ROBINSON SAID THAT SHE
MADE NO EFFORT TO KEEP A NOTARY LOG OF EVERY DOCUMENT SHE SIGNED,
THIS WOULD HAVE BEEN TOO DIFFICULT, AND SHE DID NOT KEEP A LOG OF
DOCUMENTS SHE NOTARIZED.  IF THERE WERE SUCH A NOTARY LOG, IT
WOULD BE IN THE POSSESSION OF COUNTRYWIDE MORTGAGE/BANK OF
AMERICA.  [AFTER ACKNOWLEDGING THIS TO US, MS. ROBINSON MADE
CLEAR TO US, THAT IF IT WAS REPEATED TO ANYONE, SHE WOULD DENY
EVER SAYING IT.]

WE SHOWED MS. ROBINSON A COPY OF THE ASSIGNMENT OF MORTGAGE,
WHICH WAS NOTARIZED BY MS. ROBINSON, AND DATED 1-25-2008.  SHE
ACKNOWLEDGED THAT TIFFANY SKAIFE CHANGED THE DATE ON THE
DOCUMENT.  SPECIFICALLY, MS. ROBINSON SAID THAT THE WAY THE
NUMERAL "8" WAS MADE, WAS NOT TYPICAL OF HOW SHE WOULD MAKE THE
NUMPERAL "8."  SHE WOULD HAVE MADE IT WITH TWO CIRCLES ON TOP OF
EACH OTHER.  NOT THE WAY IT WAS DRAWN.  SHE REITERATED SEVERAL
TIMES, THAT SHE DID NOT CHANGE THE DATE, THE WAY THE DATE IS
WRITTEN IS NOT HER HANDWRITING.

FINALLY, MS. ROBINSON SAID THAT TIFFANY SKAIFE WORKED IMMEDIATELY
IN BACK OF HER AT COUNTRYWIDE MORTGAGE, AND THAT SHE (TIFFANY)
WOULD FREQUENTLY HAND HER AS MANY AS FIVE DOCUMENTS AT A TIME FOR
HER TO NOTARIZE, AND THAT SHE WOULD NOTARIZE THEM WITHOUT LOOKING
AT THEM, OR FILLING OUT A NOTARY LOG.

I SOLEMLY SWEAR AND AFFIRM THAT THIS AFFIDAVIT IS TRUE AND
CORRECT.

11-8-12 WILLIAM N. ALBRIGHT

Signed and sworn before me, this 13th th Day of NOVEMBER, 2012.

State of Texas
County of Collin

Notary Public

ANN H PARK
My Commission Expires
May 23. 2013