UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL JONES

Plaintiff

Case # 1:20-cv-10800-FDS

V

BANK OF NEW YORK TRUSTEE FOR THE CERTIFICATE HOLDERS CWABS, INC. ASSET-BACKED CERTIFICATE, SERIES 2004-7,

SANDRA ROBINSON

SELECT PORTFOLIO SERVICING INC

Defendants

## PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO DISMISS

Plaintiff respectfully requests that the Court take notice of the well-pleaded allegations of the *pro se* Plaintiff's complaint, which this Court must accept as true at this juncture of the proceedings, and which, in light of the Plaintiff's *pro se* status, the Court must hold to a less stringent standard than formal pleadings drafted by an attorney and construe liberally. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed. 2d 652 (1972).

Under Federal Rule 12(b)(6), the Court must deny the Defendants' motion to dismiss unless the Defendants demonstrate "beyond doubt that the [Paul Jones] can prove no set of facts in support of his claim that would entitle him to relief." Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir.1997). In making this determination, the Court must also "accept the factual allegations in the Plaintiffs complaint and must construe those facts in the light most favorable to the Plaintiff.". As demonstrated below, the Defendants' motion cannot survive the application of these standards.

1

INTRODUCTION

Plaintiff Paul Jones, lives in Stoughton, Massachusetts, Defendant the Bank of New York Mellon ("BONYM"), foreclosed on Plaintiffs home in April of 2018. BNY failed to strictly comply with the power of sale contained in the mortgage, as it failed to properly notify Plaintiff of his right to cure the default prior to the foreclosure sale.

The Plaintiff, entered into and executed a separate contractual Security Instrument agreement ("mortgage") specifically with Optima Mortgage Corporation, whereby, under Massachusetts state law, the Plaintiff specifically granted the title to the subject property, and the contractual right to enforce the power of sale in Plaintiffs mortgage, specifically to Optima Mortgage Corporation,.

Defendant BNY is not the "original "lender", and thus under Massachusetts law, must establish its legal theory as to how it is in current possession of the legal title to the plaintiffs real property, and the attendant right to enforce the power of sale in the plaintiffs mortgage contract when they first claimed they were owners of plaintiffs Note & Mortgage and began foreclosure on plaintiffs home.

Plaintiff alleged that the defendants violated the Plaintiff asserts that (1) Bank of New York, Trustee did not have standing when it foreclosed Plaintiffs residence of April 2018 and they did not equally have standing under the Mortgage and or Note and the assignment of mortgage and Confirmation assignments, there is a lack of evidence of the Note's and mortgage assignment and transfer from Optima Mortgage (Original Lender ) to BNY and or to countrywide see note.

The main crux of Plaintiffs contentions is that defendants lacked authority and Power of Sale to foreclose on plaintiff's property under Section 14, Statutory Power of Sale G.L.c 183, § 21 , Section 22 and 19 of the mortgage.

MERS attempted to assign plaintiffs mortgage & note after the Cutoff date of September 1, 2004 and closing date of September 28, 2004 the PSA forbid any transfers of mortgage files including the Note to the Trust, established by the Pooling Service Agreement, assignment date is January 25, 2008 almost 4 years after the Trust was prohibited from excepting any mortgage files including notes without recourse and 3 years after BNY (Trust) filed with the *SEC form 15D, Certification and Notice of Termination of Registration* at that

2

time, the defendants BNY was prohibited *from acquiring or attempting to acquire any interest or security (Mortgage or Note), since plaintiffs Mortgage & Note was not transferred to the Trustee before that date (according to defendant Assignment & Confirmatory Assignment) it could no longer be done this is contrary* 'Statutory Power of Sale G.L.c 183, § 21 , Section 14 and Section 22 of the mortgage.

Defendants BNY January 25, 2008 assignment is void as MERS transfer was invalid, a transfer of a mortgage is a transfer of an interest in land; ["must be treated as such", see Ibanez at p. 649]., Purported "transfers" under a PSA are not immune from Massachusetts real property law, [see Ibanez at p. 649].

The plaintiff repeatedly alleges throughout the amended complaint that defendants in this case did not hold the mortgage and Note at the time they foreclosed and, therefore, had no right to exercise the power of sale under Section 14, Statutory Power of Sale G.L.c 183, § 21 , Section 22 and 19 of the mortgage, *Ibáñez* clearly held that a foreclosure carried out by an entity that does not hold the power of sale is void. *See* 941 N.E.2d at 50, 53.

Plaintiff also alleges that defendant MERS had no power to transfer plaintiffs' mortgage and Note, and that defendant's assignment is void dur to the notary public and Tiffany Skaife action regarding the creation of the January 25, 2008 assignment from Optima Mortgage to MER transferring the note to the defendant BNY (TRUST).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in 550 U. S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. ., at 555 (citing v. 478 U. S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U. S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id , at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." id , at 570. A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "id , at 557 (brackets omitted). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F. 3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Here, based upon the foregoing the Plaintiff's complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face, which allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.

## ARGUMENT

As *Ibáñez* explained, the Massachusetts statutory foreclosure scheme affords a mortgagee possessing a power of sale under Section 14 substantial authority. Only those listed in that section (i.e. "the mortgagee or his executors, administrators, successors or assigns") can exercise it. This power, of course, comes with great responsibility and "[o]ne who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power and the sale is wholly void." *Ibáñez,* 941 N.E.2d at 49–50 (some alterations in original). That is, "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' under these statutes is void." *Id.* at 50 (citations omitted). The power of sale can only be exercised if the foreclosing entity is the "assignee[ ] of the mortgage[ ] at the time of the notice of sale and the subsequent foreclosure sale." *Id.* at 51. see  Juarez v. Select Portfolio Servicing, Inc. 708 F.3d 269 (1st Cir. 2013)

## The Absence of Standing Under the Mortgage
## STRICT COMPLIANCE WITH PARAGRAPH 22

It was well established before *Pinti* that a foreclosure by sale depended on compliance with the terms of the mortgage. See, e.g. *McGreevey v. Charlestown Five Cents Sav. Bank*, 294 Mass. 480, 481, 484 (1936); *Moore*

*v. Dick*, 187 Mass. 207, 211 (1905); *Smith v. Provin*, 4 Allen 516,518 (1862); *Roarty v. Mitchell*, 7 Gray 243, 243-244 (1856).

Defendants BNY & SPS states that (See Dck 20 line 4) "Jones in conclusory fashion alleges that the Trust is not the holder of the Note and Mortgage". (Amended Complaint, ¶ 31). Defendant also states, *"plaintiff states Conclusory allegations of holder status do not state a plausible claim"*.

Defendants case law quoted and relied upon above for argument regarding section 22 of the mortgage is not reliable, the caselaw they use pre-dated the Pinti and Paiva v. Bank of N.Y. Mellon First Circuit No. 15-2042 , this court should deem BNY argument & caselaw arguing section 22 as irrelevant, plaintiffs' claims is Post Pinti , Eaton , Paiva, HMC Assets, LLC v. Conley, Anderson v. Nationstar Mortgage, Valdez v .Federal Nat'l Mortg, Paiva v. Bank of N.Y. Mellon.

Plaintiffs section 22 claims was after the SJC settled this default notice issue not being sent from the Lender in *Pinti* and *Juarez v. Select Portfolio Servicing, Inc.,* Paiva v. Bank of New York Mellon, 120 F.Supp.3d.

Massachusetts law is clear "invalidating a foreclosure sale where the loan "servicer" sent the default notice because "[t]he language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: Lender must do so" see Paiva v. Bank of N.Y. Mellon, 120 F.Supp.3d 7, 10 (D.Mass. 2015) also Massachusetts Supreme Judicial Court's ("SJC") case law. See G.L. c. 183, § 21 (requiring a foreclosing bank to "comply with the terms of the mortgage"); U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) (the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to); see also Pinti v. Emigrant Mortgage Company, Inc., 33 N.E.3d 1213, 1226 (2015) (strict compliance with the notice of default required by paragraph 22 is necessary in order for a foreclosure sale to be valid).
Further, defendant BNY approach is consistent with the SJC's recent decision in Pinti, which held that a foreclosing bank's "strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid," and that the bank's "failure to strictly comply rendered the sale void." 33 N.E.3d at 1226.

Bank of New York, Trustee asserted that they was the present holder of the relevant mortgage on Plaintiffs residence, said mortgage being original lender Optima Mortgage to Mortgage Electronic Registration Systems

(MERS) as nominee to assigned to defendant Bank of New York, Trustee for the Certificate Holders, CWABS, Inc., Asset- Backed Certificates, Series 2004-7 (BNY).

Plaintiff is entitled to discovery as to precisely how Defendant BNY came in the possession and claim that they owned the right to enforce the plaintiffs Note and Mortgage.

There are several genuine issues of fact with respect to the ownership of the plaintiffs' mortgage and Note. If, as The Pooling and Servicing Agreement" (PSA) *Exhibit* 1 suggests, plaintiffs note and the mortgage were sold to the trust before it closed on September 28, 2004, Both the note and the mortgage would have been the property of the BNY trust since this time , how then can MERS make an assignment on January 25, 2008.

The PSA, is an agreement between CWABS, INC. as depositor of a set of assets (primarily mortgage loans and Notes ), COUNTRYWIDE HOME LOANS, INC. as Seller, COUNTRYWIDE LFT LLC, Seller COUNTRYWIDE HOME LOANS SERVICING LP, Master Servicer, FEDERAL NATIONAL MORTGAGE ASSOCIATION Guarantor and THE BANK OF NEW YORK, Trustee *See* Exhibit 1

Its inclusion suggests that the mortgage was securitized and sold to the trust long before MERS January 25, 2008 mortgage assignment was created. The PSA states that all assets include "Mortgage Loans" that would be conveyed to the trust on the closing date, September 28, 2004. "Mortgage Files[]" is relevantly defined to include both the note and the mortgage. According to the PSA, the "Mortgage Files," which include the mortgage notes and recorded mortgages, endorsed or assigned respectively either in blank, to the trust, or to the trustee, were also to be delivered to the trust on January 28, 2004. The trust then issued a variety of classes of "certificates," each representing a fractional ownership interest in the bundle of Mortgage Loans that made up the trust assets, and the certificates were subsequently sold on the open market. The PSA appears to make no provision, and appears to grant the trust no authority, for acquisition of additional assets by the trust subsequent to the closing date January 28, 2004 See Exhibit 1

Ibanez, at 649; "Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such."

6

The Assignment of this Mortgage Exhibit 2 signed October 10, 2006 and notarized on January 25, 2008. The **notary's** handwritten revision of the notarization date is worthy of note. the signature and altered date on the assignment **is not truthful**, the notary Sandra J. Robinson states that she did not "change any date on the assignment and that the operation of Countrywide/Bank of America the creators of the assignment were so against what I (She) believe at the time But I felt powerless to do anything about it, See July 30, 2020 notary Sandra J. Robinson Affidavit Exhibit 3. She also went on to say after Private Investigator William N. Albright showed her the Affidavit that he had prepared on November 6, 2012 about their conversation covering each point (Line by Line) that they talked about 8 years ago ( He read her the affidavit) about the defendants BNY January 25, 2008 assignment, notary Sandra J. Robinson Affirmed on July 24, 2020 that everything in the affidavit he prepared Eight years ago was true & correct See Exhibit 4 recording transcript on CD.

For the record Private Investigator William N. Albright (PI) obtain a copy of the notary Sandra J. Robinson voter registration that shows her actual signature from March 3 , 2020 See Exhibit 5, the signature on defendants BNY assignment dated January 25, 2008 that they rely on See Exhibit 2 is not the notary Sandra J. Robinson signature, Sandra J. Robinson also stated on November 6, 2012 that she did not make an effort to keep any notary log of documents she did notarize after the PI showed her the January 25, 2008 assignment she acknowledge that Tiffany Skaife changed the date on the assignment the way the 8 is written is not her hand writing. See November 6, 2012 notary Sandra J. Robinson Affidavit Exhibit 6.

Tiffany Skaife signed as Assistant Secretary for MERS, Inc as a nominee for Optima Mortgage Corporation on the Assignment. Skaife is on the alleged Take Your Home Back Robo-signer list. Tiffany Skaife worked for Countrywide Home Loans managing several title curatives and closing teams in two of its Dallas area servicing sites. The Assignment of Mortgage is indicative of a robo-signed document. The Mortgage is signed from an officer of MERS Inc directly to the Trustee. The signer works for a different company, not MERS, Inc. The Notary signature is illegible. The signer has signed for other entities. In the witness whereof statement, the date is missing. Names are stamped in block letters. The Assignment purports to transfer the Note with it. Another Assignment of Mortgage was done by MERS as Nominee for Optima Mortgage Corporation. The date the notary signed it first had 10/10/06. The date was crossed out and 01/25/08 was written in.

Tiffany Skaife also worked for Innovative Asset Management it was formed to "bridge the gap" in the REO industry of its need for an innovative and progressive Default Management Company, that specialized in creating foreclosure documents in 2008 See Exhibit 12.

In addition, this purported assignment is assigning the mortgage with certain note(s) from Mortgage Electronic Registration Systems, Inc as nominee, P.O. Box 2026, Flint, MI 48501-2026. MERS' own Terms and Conditions of Membership published on MERS, Inc website at www.mersinc.org states that "the MERS System is not a vehicle for creating and transferring beneficial ownership in mortgage loans" MERS, Inc further indicates that it does not ever have beneficial interest in mortgage notes. It states, "that it has no rights whatsoever for creating or transferring beneficial interest in the mortgage loans. MERS specifically states in Defining the Mortgage Electronic Registration System, once in the MERS System, MERS becomes the Mortgagee of record for its members, but the original lender or subsequent party who purchased the note retains physical possession of the note.

Attached as Exhibit 1 is BNY Pooling and Servicing Agreement (PSA) for CWABS, Inc. Asset-Backed Certificates, Series 2004-7 from the U.S. Securities and Exchange Commission online database. (Debtor believes as of this writing that the 174-page document has been put on a CD and given to the Court and will immediately deliver another paper copy of PSA to the need be.) Page 1 of the PSA identifies CWABS, Inc. as the only Depositor, and Countrywide Home Loans, Inc. and Countrywide LFT LLC as the only two Sellers. The Bank of New York is identified as the only Trustee.

"On a motion to dismiss, [the court] may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020) (quoting Lydon v. Local 103, Int'l. Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (citation omitted)).

Defendants may argue that Plaintiffs lack standing to challenge the Assignment of the Mortgage & Note from MERS because Plaintiffs is neither a party to nor a third-party beneficiary of the assignment contract or PSA agreement. Defendants may conveniently present this spin to confuse the court, and in fact, this was also attempted by the Appellant's in Ibanez. Indeed, the Pooling and Servicing Agreement is a contract among the

8

parties (BNY) to the PSA that place certain requirements related to their respective representations and warranties to each other.

The Plaintiff never makes no such claim as one of the parties to the PSA and does not seek to enforce any rights under the terms of the PSA, but rather he seeks to defend his title on the basis of the invalidity of the timing of the assignment that defendant BNY solely relies upon and plaintiffs' claims are based upon the timing of plaintiff's mortgage assignment that the Trust's failure to convey to the trust (BNY) under the requirements of its Governing Instruments under Massachusetts Section 14 'Statutory Power of Sale G.L.c 183, § 21, See *Juarez v. Select Portfolio Servicing, Inc. 708 F.3d 269 (1st Cir. 2013)*.
But it is certainly one thing to question whether an assignment took place pursuant to the terms of a loan trust's governing documents (in this case, the PSA), and quite another to question whether the assignment took place as Section 14 requires and Massachusetts State Laws including 'Statutory Power of Sale G.L.c 183, § 21,. See *Juarez v. Select Portfolio Servicing, Inc. 708 F.3d 269 (1st Cir. 2013)*.

Section 2.01(a) of the PSA, on Page 50, has the PSA Sellers Countrywide Home Loans, Inc. and Countrywide LFT LLC transferring the applicable mortgage loans to the Depositor CWABS. The same Section 2.01(a) of the PSA, on Page 51, has the PSA Depositor CWABS, Inc. immediately transferring the applicable mortgage loans to the Trustee, Bank of New York.( See Exhibit 7 two Transfer affidavits from CWABS the depositor dated September28, 2004)

The PSA does not authorize Bank of New York, Trustee, to accept mortgages from any entity other than CWABS. Nor does the PSA authorize CWABS to accept mortgage loans from any other source besides the two sellers named in the PSA, Countrywide Home Loans, Inc. and Countrywide LFT LLC. In particular, neither Bank of New York, Trustee, or Depositor CWABS, Inc., is authorized to accept an assignment of debtor's mortgage or Note from MERS as nominee for Optima Mortgage Corporation. Any acceptance of debtor's mortgage by Bank of New York, Trustee, or by CWABS, if indeed either ever did so, was *ultra vires* and unlawful, this would be contrary to the power of sale as BNY claims that they received a valid assignment and Note from MERS directly to BNY.

It is undisputed that MERS admits that it does not own or hold Notes, see Eaton at n. 27, and Culhane v. Aurora Loan Servcs. of Neb., 708 F. 3d. 282, 287 (1st Cir. 2013);

9

Bank of New York, Trustee had no authority to accept debtor's mortgage from any entity other than CWABS, Inc. Therefore, Bank of New York, Trustee had no rights to debtor's mortgage when if filed the foreclosure.

The Pooling and Servicing Agreement Section 2.01 Conveyance of Mortgage Loans sets forth the specific steps each transfer of the Note and Mortgage/Deed of Trust must follow to be conveyed to the Trust and the timeframe in which it must be done. There is no evidence that this was ever properly done. SEE PSA.

On January 27, 2005, the defendants BNY (Trust) filed with the *SEC form 15D, Certification and Notice of Termination of Registration* ( Exhibit 8) at that time January 27, 2005, the defendants BNY was prohibited from acquiring or attempting to acquire any interest or security Mortgage or Note, since plaintiffs Mortgage & Note was not transferred to the Trustee before that date (according to defendant Assignment & Confirmatory Assignment) it could no longer be done.

See Initial Certification of Trustee Exhibit 9, See Optima Mortgage Insurance Policy Exhibit 10 dated March 29, 2005, also See Exhibit 11 Optima Mortgage Commitment Confirmation to sell plaintiffs mortgage to Bank of America date February 1, 2011 some three years after BNY January 25, 2008 assignment had been made and recorded in the Norfolk County of Deeds.

In order for the Defendant to have substantial power (Power of Sale) that the Massachusetts statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight Defendants BNY & SPS have to show:
1. That plaintiffs Mortgage & Note was transferred from the original mortgage company Optima Mortgage from  A= MERS to B= Depositor CWABS to C= BNY Trustee , *not from A= MERS to C= BNY* Trustee According to the PSA.
2. That BNY transferred plaintiffs Mortgage & Note before the PSA closing date of September 28, 2004, The Trustee's s claim of being the legal holder of the mortgage and note cannot be substantiated there are no records on the face of this earth that BNY can show a perfected Chain of Title of the Mortgage and Note from the Originator of the loan to the Trustee which will create the Power of Sale, defendant have not put forth a complete chain of title or a Signed PSA that show that the plaintiff mortgage wasn't already in the pool when the assignment was made.

3. That BNY transferred plaintiffs Mortgage & Note before January 27, 2005 (Contrary to their assignment) when BNY filed with the *SEC form 15D, Certification and Notice of Termination of Registration Terminating their registration of the Trust* at that time, the Trust was prohibited from acquiring or attempting to acquire any interest or security. Since the Mortgage file was not transferred to the Trustee before that date, it can no longer be done.

Plaintiff believes that his mortgage was not transferred to BNY by CWABS the depositor in a timely fashion this is fatal to their belief they BNY had the Power of Sale.

Debtor has shown that Bank of New York, Trustee failed to identify "every subsequent transferee" (Chain of Title) of Massachusetts Power of Sale obligations. The foreclosure should be voided as they lacked Power of Sale for this reason alone, as BNY must not be rewarded for its noncompliance. Debtor has been forced to do BNY homework.

Plaintiffs questions the transactions that led to the assignment and Note to BNY (The Trust) and plaintiff states the assignment is not timely in fact BNY did not properly take the steps as Section 14 and the Massachusetts Power of Sale requires for the assignment according to the PSA, BNY whom foreclosed on my property actually had the power of sale at the time of the foreclosure under Section 14 'Statutory Power of Sale G.L.c 183, § 21,. See *Juarez v. Select Portfolio Servicing, Inc. 708 F.3d 269 (1st Cir. 2013)requires.*

However, "the question of whether [a mortgagor has] standing to challenge [an] assignment and Note is different from the question of whether [he has] standing to challenge the foreclosure on the basis that [the foreclosing entity] did not properly hold the mortgage and Note at the time of the foreclosure." Wenzel, 841 F. Supp. 2d at 479 n.16.

A number of decisions have held that mortgagors have standing to challenge a foreclosure sale as void due to an allegedly invalid Assignment and Note. See In re Lacey, Bankr. No. 10- 19903-JNF, 2012 WL 2872050, at *16-17 (Bankr. D. Mass. July 12, 2012); In re Bailey, 468 B.R. 464, 473-76 (Bankr. D. Mass. 2012); Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423, 429 n.5 (D. Mass. 2011). Others have held the opposite. See Woods, 2012 WL 2577580, at *2-3; Armand, 2012 WL 2244859, at *3-4; McBridge v. Am. Home Mortg. Servicing Inc., Civil Action No. 11-10998-RWZ, 2012 WL 931247, at *3 (D. Mass. March 19, 2012).

11

The Massachusetts Supreme Judicial Court has held that "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure . . . is void." Ibanez, 941 N.E.2d at 50. An action may be brought to set aside a void foreclosure. See Rogers, 47 N.E. at 604 (allowing mortgagor in tort action who was foreclosed upon in a void foreclosure to elect between full damages or recovering the property). Consequently, a mortgagor may bring an action to set aside a foreclosure conducted by an entity that was never validly assigned the mortgage.

Plaintiff has standing to challenge BNY because plaintiff has demonstrated "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's BNY & SPS actions, and a likelihood that prevailing in the action will afford some redress for the injury." Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 317 (1st Cir. 2012) (quoting Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009)). In In re Bailey, Bankruptcy Judge Boroff succinctly stated why mortgagors such as plaintiff meet the standing requirements:

> *"The injury to the [mortgagor] is the purported termination of her equity of redemption in the Property by a party who had no authority to foreclose that equity of redemption. If [the foreclosing entity] did not hold the Mortgage at the time it foreclosed, then the injury is directly traceable to [the foreclosing entity], as is the allegedly invalid foreclosure by [the foreclosing entity] that constitutes the [mortgagor's] claimed injury. Should the Court determine that the Foreclosure Sale is void, the [mortgagor] will retain the equity of redemption--an interest in the Property that cannot be lightly disregarded".*

In re Bailey, 468 B.R. at 475-76. "To reject any argument which pertains to assignments out of hand would eviscerate the holding of Ibanez and deprive mortgagors of the most valuable remedy they have to protect their equity of redemption." In re Lacey, 2012 WL 2872050, at *17. BNY has not submitted the Chain of tile and or the Notes transaction history in support of their motion to dismiss their motion is premature See *Lewis v. Bank of N.Y. Mellon Tr. Co.*, Civil Action No. 16-11122-FDS, at *2 (D. Mass. Aug. 31, 2016).

MERS the assignor had nothing to assign or had no authority to make an assignment directly to BNY "(under the PSA), mortgagor has "circumscribed" standing "to challenge a mortgage assignment as invalid, ineffective, or void [if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular

assignee]"); Woods, 733 F.3d at 354." *Ressler v. Deutsche Bank Trust Co.*, 92 Mass. App. Ct. 502, 509 n.15 (Mass. App. Ct. 2017).

Plaintiff seek declaratory relief from the Mortgage & Note and question whether all necessary parties have been joined as required under G. L. c. 231A." *Ressler v. Deutsche Bank Trust Co.*, 92 Mass. App. Ct. 502, 509 n.17 (Mass. App. Ct. 2017) "When an action for declaratory relief is properly brought and relief is denied on the merits, the action should not be dismissed. *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare,* 368 Mass. 15, 31, cert. denied, 423 U.S. 929 (1975). The rights of the parties should be declared. " *Attorney General v. Kenco Optics, Inc.*, 369 Mass. 412, 418 (Mass. 1976)

The Supreme Judicial Court has held that a mortgagee must strictly comply with the terms of the power of sale. "Statutory Power of Sale G.L.c 183, § 21 See U.S Bank Nat'l Ass'n. v. Ibanez, 458 Mass. 637, 646 (2011) ("[0]ne who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void.") (quoting Moore v. Dick, 187 Mass. 207, 211 (1905), See Roche v.Farnsworth, 106 Mass. 509, 513 (1871) (power of sale contained in mortgage "must be executed in strict compliance with its terms . ""[f]oreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it")." *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, n.20 (Mass. 2015)

Defendants BNY & SPS states See Dck 20 line 4 "Furthermore, the documents attached to and referenced in the Amended Complaint contradict the conclusion that the Trust lacked authority to enforce the Note and the Mortgage including through foreclosure. (Amended Complaint, ¶¶ 21, 22, 26, 27; Ex. B).

Plaintiff has proffered significantly reliable evidence that Defendants have not provided any evidentiary foundation that they were in fact in possession of the Plaintiff's note or mortgage at the time of the first publication of the auction of the Plaintiff's residence. In fact, Plaintiff's proffer now establishes that the purported assignment of mortgage and Note relied upon was never obtained under the Massachusetts Power of Sale statue.

Defendants accelerated plaintiffs mortgage 90 days after the default notice was sent the statues was rewritten in 2010 enlarged to 150 days this was contrary to the Power of Sale and 244 See General Laws c. 244, § 35A (§

13

35A ), enacted by St. 2007, c. 206, § 11, prohibited acceleration of a residential property mortgage obligation or enforcement of such a mortgage due to a default "until at least [ninety] days after the date a written notice is given by the mortgagee to the mortgagor." G.L. c. 244, § 35A (*b* ). The statute was amended and substantially rewritten in 2010, at which time the notice period before acceleration could occur was enlarged to 150 days, and a provision was added requiring, among other things, that the mortgagee (creditor) "engage [ ] in a good faith effort to negotiate a commercially reasonable alternative to foreclosure." G.L. c. 244, § 35A (*b* ), (*g* ), as amended by St. 2010, c. 258, § 7.*Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, n.22 (Mass. 2015).

The defendants argue *Schumacher authority*, but that there are substantive similarities between § 35A and paragraph 22: both require notice of default, of the right to cure, of the deadline by which the default must be cured, and that failure to cure the default may result in acceleration and foreclosure by sale. But we disagree that *Schumacher* controls in this case and signifies that a mortgagee need not comply strictly with paragraph 22. This is so because the notice provisions in paragraph 22 are "terms of the mortgage," not terms of a statute "relating to the foreclosure of mortgages by the exercise of a power of sale." G.L. c. 183, § 21. See *Wells Fargo Bank, N.A. v. Cook,* 87 Mass.App.Ct. 382, 389–390, 31 N.E.3d 1125 (2015) ( *Schumacher* does not control where issue is whether mortgagee must comply with certain terms of mortgage as opposed to statute relating to foreclosure). *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226 (Mass. 2015)

In order to exercise this statutory power of sale, the bank must satisfy a number of requirements. Two of these requirements are relevant here. First, the foreclosing bank must hold both the note and the mortgage in order to have standing to sell the property at a foreclosure sale.See Eaton , 969 N.E.2d at 1125, 1129–30 ; Ibanez , 941 N.E.2d at 50 (citing Mass. Gen. Laws ch. 183, § 21 ; Mass. Gen. Laws ch. 244, § 14 ). If it does not, the foreclosure is void. See Galiastro v. Mortg. Elec. Registration Sys., Inc. , 467 Mass. 160, 4 N.E.3d 270, 276 (2014) ; Eaton , 969 N.E.2d at 1131 ; Ibanez , 941 N.E.2d at 50. Second, the foreclosing bank must strictly comply with the default notice provisions in paragraph 22 of the mortgage. Pinti , 33 N.E.3d at 1221 n.16, 1222–24. Again, failure to do so renders the foreclosure void. Id. at 1225–26*Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 156-57 (1st Cir. 2017)

## THE DEFENDANTS BNY & SPS ACTION WAS CONTRAY TO PARAGRAPH 19

BNY & SPS attorneys argues and admit that their notice Omitted the qualification that the payment must be tendered at least five days before the foreclosure date "*Here, the notice could not feasibly specify the date of*

*reinstatement pegged to the date of the foreclosure sale, because the foreclosure sale was not scheduled as of April 26, 2017. The notice of default and right to cure was a precursor to noticing and scheduling the sale and taking other action actions in furtherance of the foreclosure, pursuant to G.L. c. 244. The Trust would not have proceeded with the step of noticing and scheduling the foreclosure sale had Jones timely cured the default in response to the notice he undeniably received*". This excuse is contrary to paragraph 19 and 22 of the mortgage (Power of Sale). See Pinti, 33 N.E.3d at 1223 n.20 (citing Foster, Hall & Adams Co. v. Sayles, 100 N.E. 644, 646 (Mass. 1913)).

*(See Plaintiff paragraph 19 from mortgage below)*

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Defendants BNY & SPS attorneys admit that their notice omitted that the payment must be tendered at least five days before the foreclosure date this is contrary paragraph 19 because the notice did not fully inform the Plaintiff about the five-day deadline to reinstate the loan, the breach letter was potentially deceptive, In sum, the bank had no obligation under paragraph 19 to lay out its procedures, but it did have an obligation under paragraph 22 to provide notice and, under Pinti, to make anything it did say accurate and avoid potential deception. Words are usually elastic, but it does not matter that the purist could well think that the notice in this case was potentially deceptive rather than literally inaccurate (for Plaintiff could defeat foreclosure by payment before the foreclosure date). Omitting the qualification (that the payment must be tendered at least five days before the foreclosure

15

date) in our view rendered the notice potentially deceptive. See Pinti, 33 N.E.3d at 1223 n.20 (citing Foster, Hall & Adams Co. v. Sayles, 100 N.E. 644, 646 (Mass. 1913)), Thompson v JPMORGAN CHASE BANK, N.A., 2019.

Defendants BNY & SPS letter did not comply with paragraph 19 because it didn't say anything about the five-day deadline. Instead, the letter advised the Plaintiff that they could reinstate "before" the foreclosure sale, which implied that a reinstatement payment given *fewer than five days before the sale would reinstate the loan.*

The letter was confusing and potentially deceptive. The lender failed to comply with the notice requirements in plaintiffs' mortgage before foreclosing on my home.

Specifically, the mortgage requires that homeowners be informed of "the right to reinstate after acceleration of the loan." Thought the notice stated that the plaintiff had the right to reinstate, it failed to tell me that under the terms of my mortgage I could only do so up to five days before the sale. If I tried to reinstate less than five days before the sale the bank could have still foreclosed on my property this is contrary to the Power of Sale.

Defendants arguments of "A construction of paragraph 19 of the Mortgage that required a firm date to reinstate at the notice to cure stage would be illogical" , "The Commonwealth explicitly dictated strict compliance with the Division issued template form notice, without any deviation". These statements are contrary to the Power of sale that has been in place in Massachusetts for over 160 years. *See Moore v. Dick, 187 Mass. 207, 210–212, 72 N.E. 967 (1905), quoted in U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 646, 941 N.E.2d 40 (2011) (Ibanez ), was such a case. Others include, e.g., McGreevey v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 483–484, 2 N.E.2d 543 (1936) ; Smith v. Provin, 86 Mass. 516, 4 Allen 516, 518 (1862) ; Roarty v. Mitchell, 73 Mass. 243, 7 Gray 243, 244 (1856),* Pinti v. Emigrant Mortg. Co. 472 Mass. 226 (Mass. 2015), *Ibanez*, 458 Mass. at 646, 941 N.E.2d 40.

The Massachusetts Supreme Court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms' "; the failure to do so results in "no valid execution of the power, and the sale is wholly void." *Ibanez, 458 Mass. at 646, 941 N.E.2d 40, quoting Moore v. Dick, 187 Mass. 207, 211, 72 N.E. 967 (1905). See Pryor v. Baker, 133 Mass. 459, 460 (1882)* ("The exercise of a power to sell by a *1219 mortgagee is always carefully watched and is to be

exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" *See, e.g., Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 580–581, 969 N.E.2d 1118 (2012) ; Ibanez, 458 Mass. At 647–648, 941 N.E.2d 40. See also Tamburello v. Monahan, 321 Mass. 445, 446–447, 73 N.E.2d 734 (1947) Pinti v. Emigrant Mortg. Co. 472 Mass. 226 (Mass. 2015) (power of sale referenced in mortgage was statutory power of sale.*

Defendants also points the court The First Circuit request to certify a question from the Supreme Judicial Court Thompson v. JPMorgan Chase Bank, N.A, defendants states" Strict compliance with paragraph 19 remains questionable. The First Circuit in Thompson v. JPMorgan Chase Bank, N.A., certified a question the Supreme Judicial Court: Did the statement in the August 12, 2016, default and acceleration notice that "you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place" render the notice inaccurate or deceptive in a manner that renders the subsequent foreclosure sale void under Massachusetts law? 931 F.3d 109, 111 (2019). The SJC has not ruled". Plaintiff states for the record I am *also* arguing that the defendants SPS sent the notice and they "Omitted the qualification that the payment must be tendered at least five days before the foreclosure date" this question is not before the Supreme Judicial Court regarding Thompson v. JPMorgan Chase Bank, N.A.

### Post-foreclosure notice to third parties is irrelevant G. L. c. 244, § 15A

Defendant states that G. L. c. 244, § 15A is not part of the exercise of the power of sale contained in the Mortgage, it is a requirement that must be done *within thirty days of taking possession* or conveying title after the foreclosure which they failed to do until almost four months after, the statue is clear it states : A mortgagee taking possession of mortgaged premises prior to foreclosure or a mortgagee conveying title to mortgaged premises pursuant to the provisions of this chapter shall, *within thirty days of taking possession* or conveying title, notify all residential tenants of said premises, and the office of the assessor or collector of taxes of the municipality in which the premises are located and any persons, companies, districts, commissions or other entities of any kind which provide water or sewer service to the premises, of said taking possession or conveying title. Mass. Gen. Laws ch. 244, § 15A.

Plaintiff was still getting demand letters from the City of Stoughton Tax Department and threats of a lien on his home that had been foreclosed and threats of attaching liens to plaintiffs property and credit report this caused

plaintiff duress, embarrassment loss of sleep and migraine headaches on a daily bases this was contrary to MGL 93a, Power of Sale, G. L. c. 244, § 15A and other Federal & State Statues.

BONYM failed to comply with conditions precedents to the execution of a power of sale G.L. c. 244, § 15A, as it did not notify the town's tax assessor's office within 30 days of the sale as required. Instead, BONYM waited 90 days to notify the assessor's office, and its failure to do so should void the foreclosure sale. As a result, Plaintiff filed this action, bring claims for (1) violation of the mortgage power of sale, and (2) failure to comply with G.L. c. 244, § 15A.

Defendant state that "G. L. c. 244, § 15A is not part of the exercise of the power of sale contained in the Mortgage" The Massachusetts courts has stated "conditions precedent to the execution of a power of sale" to describe the type of mortgage provision with which strict compliance is required, and the cases cited in support of that phrase included conditions that were not directly related to the foreclosure sale itself, but were to be performed by the mortgagee *either before or after the sale.* See *id.,* citing *Smith v. Provin,* 86 Mass. 516, 4 Allen 516 (1862) *Pinti v. Emigrant Mortg. Co.,* 472 Mass. 226, n.14 (Mass. 2015).

Smith v. Provin, 4 Allen 516 , where the power required that an affidavit of the proceedings should be made and recorded in the registry of deeds within one year after the sale, the same principle was recognized and applied, and, it appearing that no such affidavit had been made and filed for record until nearly three years had expired, the sale was treated as a nullity. The manner in which the notice of the proposed sale shall be given is one of the important terms of the power, and a strict compliance with it is essential to the valid exercise of the power. The case stands as though there had been no attempt to foreclose, and the right of redemption is still outstanding. quoting HENRY R. MOORE & others vs. ALEXANDER W. DICK.187 Mass. 207 November 3, 1904

Defendants failed to comply with Massachusetts law G.L. c. 244, § 15A. which was fatal to obtaining the Power of Sale the foreclosure must be voided, because the Mortgage was an "FHA Mortgage", under paragraph 9 of the mortgage, Wells Fargo was first required to have a face to face meeting with the borrower. See G.L. c. 239.

M.G.L. c. 93A

Defendants state that the Plaintiff "has failed to demonstrate any violation M.G.L. c. 93A failure to comply with the statutory provisions in G.L. c. 244 § 2, 14, Section 19 & 20 , G. L. c. 244, § 15A of the Mortgage and

18

Plaintiff's loss of equitable title to the Property, here Plaintiff's claims are also directed towards the conduct of BNY & SPS. meritorious claim against the Trust, and SPS for the wrongful foreclosure of his residence, and would have claims for monetary damages associated with such actions on the part of Defendants.

Secondly, under G.L. c. 244 § 14, a violation of any of the above statues is contrary to MGL 93A. Plaintiff has sent defendants BNY & SPS a 93 A demand letter in 2018 the statute of limitation is not over, also plaintiff under the statue was not required to send the defendants a 93 A demand letter as they don't have offices or assets in the state. Plaintiff has pled MGL 93a claims also against Sandra J. Robison if she did sign and notarize the assignment allowed Tiffany Skaife to change the date and she also admitted that she would never look or read the documents before notarizing them.

**WHEREFORE,** the Plaintiff, respectfully requests that the Defendants Motion to Dismiss be DENIED, as he has raised significantly plausible claims, which are inappropriate for dismissal at this stage of the litigation.

/s/Paul Jones                                                    September 30, 2020
Paul Jones

Peter F. Carr, II
Eckert, Seamans, Cherin,
& Mellott, LLC
Two International Place, 16th Fl.
One Boston Place
Boston, MA 02110-2602

## CERTIFICATE OF SERVICE

I, Paul Jones, do hereby certify that this document will be sent electronically and by First Class mail to the defendant's attorneys of record upon the following this is 30th day of September 2020.

/s/Paul Jones
Paul Jones

Peter F. Carr, II
Eckert, Seamans, Cherin,

19

& Mellott, LLC
Two International Place, 16th Fl.
One Boston Place
Boston, MA 02110-2602

# VERIFICATION OF COMPLAINT AND CERTIFICATION

## STATE OF MASSACHUSETTS

## Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding, I believe that this Opposition to Defendants Motion to Dismiss is well grounded in fact and warranted by existing
law or by a good faith argument for the extension, modification or law.

I believe that this Opposition is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Opposition.
I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations or highlighted.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones                                          September 30, 2020

/s/ Paul Jones