UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
PAUL JONES,                             )
                                        )        Civil Action No.
          Plaintiff,                    )        20-10800-FDS
                                        )
     v.                                 )
                                        )
BANK OF NEW YORK AS TRUSTEE FOR         )
THE CERTIFICATE HOLDERS CWABS,          )
INC. ASSET-BACKED CERTIFICATES,         )
SERIES 2004-7; SANDRA ROBINSON; and,    )
SELECT PORTFOLIO SERVICING, INC.,       )
                                        )
          Defendants.                   )
_____)

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS UNDER 12(b)(6)

SAYLOR, C.J.

      This action arises out of a mortgage foreclosure.  Plaintiff Paul Jones, proceeding *pro se*,

has brought this action against defendants the Bank of New York Mellon ("BNY"), Select

Portfolio Servicing, Inc. ("SPS"), and Sandra Robinson, seeking to void the foreclosure and to

obtain damages for unfair and deceptive acts or practices.  The amended complaint seeks to void

the foreclosure based upon (1) violations of Mass. Gen. Laws ch. 183, § 21 (Count One); (2)

violations of Mass. Gen. Laws ch. 244, § 15A (Count Two); and (3) failure to comply with

paragraph 19 of the mortgage (Count Four).  In addition, it contends that defendants committed

unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, § 9 (Count

Three).

      Defendants BNY and SPS have moved to dismiss the complaint for failure to state a

claim upon which relief can be granted.  For the following reasons, the motion to dismiss will be granted.

## I.   <u>Background</u>

Unless otherwise noted, the following facts are drawn from the amended complaint, and documents referred to or attached to the amended complaint.[1]

### A.   <u>Parties</u>

Paul Jones is a resident of Stoughton, Massachusetts.  He was the homeowner and mortgagor in the underlying foreclosure matters.

Bank of New York Mellon is a Delaware corporation with a principal place of business in New York.  It was the trustee and foreclosing mortgagee of the mortgage at issue.

Select Portfolio Servicing, Inc. is a Utah corporation with a principal place of business in Utah.  It was the servicer of the mortgage.

Sandra J. Robinson is a resident of Aubrey, Texas.  She is a notary public in Texas.

### B.   <u>Factual and Procedural Background</u>

On June 22, 2004, Paul Jones executed a note in the amount of $274,550 with Optima Mortgage Corporation ("Optima").  (Dkt No. 11, First Am. Compl. ¶ 14; *id.*, Ex. 1 at 1).  That same day, Optima executed an allonge to the note that granted its interest in the note to Countrywide Document Custody Services, which in turn endorsed the note to Countrywide

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

The complaint sufficiently refers to the following documents that defendants submitted as part of their supporting memorandum or that Jones submitted as part of his opposition:  (1) Def. Ex. C (an April 26, 2017 letter from SPS to Jones); (2) Defs. Ex. B (an October 21, 2008 confirmatory assignment); and (3) Pl. Ex. 1 (a September 28, 2004 pooling and servicing agreement).  Those documents are also central to Jones's claims.

Home Loans, Inc. (First Amend. Compl. ¶ 14; *id.*, Ex. 1 at 7-8).[2] Also on that day, as security for the note, Jones granted Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Optima, a mortgage on his property at 572 Park Street in Stoughton, Massachusetts. (First Am. Compl. ¶¶ 12, 15; Dkt. No. 1, Compl., Ex. 1 at 1).

On September 28, 2004, Countrywide Home Loans, Inc. entered into a pooling and servicing agreement with several other banks, and sold certain loans to CWABS, Inc. Asset-Backed Certificates, Series 2004-7, a securitized trust. (*See, e.g.*, First Am. Compl. ¶¶ 64, 66, 73 (referring to the PSA); *see generally* Pl. Ex. 1). BNY was the trustee of CWABS. (Pl. Ex. 1 at 1). It is not clear from the portions of the agreement attached to Jones's opposition whether Jones's note was transferred to BNY as part of that agreement. (*See generally id.* (omitting Exhibit F-1 containing a list of the covered mortgage loans)). However, the complaint itself alleges that Jones's note was part of the agreement. (First Am. Compl. ¶ 73 ("Optima mortgage no longer held any interest in the Note according to the *defendants* Pooling and Service Agreement [] [w]hich the note and mortgage was *transferred to* on or about *September 28, 2004*") (emphasis added); *id.* ¶ 65 ("It is . . . not a question of the validity of the assignment under the PSA, but a question of the timing of the assignment in relation to the initiation of foreclosure proceedings.")).

In 2005, Jones fell behind on his mortgage payments. (*Id.* ¶¶ 15-17). It appears that he occupied the property and failed to make payments on the loan for the next thirteen years. (First

---

[2] Jones's original complaint included nine exhibits, while the amended complaint includes only two. However, the amended complaint continues to refer to many of the documents contained in the exhibits attached to the original complaint, and also refers to them by the number to which they corresponded in the original complaint. (*See, e.g.*, First Am. Compl., ¶ 23 (referring to "Exhibit 3"); ¶ 26 (referring to "Exhibit 7")). The Court will therefore also consider the exhibits attached to Jones's original complaint.

Am. Compl. ¶ 30 (referring to Apr. 26, 2017 notice of default); Defs. Ex. C at 1)).

On November 6, 2006, BNY filed a complaint to foreclose the mortgage. (First Am. Compl. ¶ 19, ¶ 23 (referring to Compl., Ex. 3); Compl., Ex. 3 at 1). On November 20, 2006, MERS attempted to assign the mortgage to BNY. (Compl., Ex. 6 at 1; First Amended Compl. ¶¶ 23, 26). Amanda Farrar, an assistant vice-president of MERS, signed that assignment. (Compl., Ex. 6, at 1). Farrar did not fill in the date on the line above her signature, but a notary swore that Farrar personally appeared before her to execute the assignment on November 20, 2006. (*Id.*). Although not entirely clear from the complaint, Jones appears to allege that the failure to fill in the date made the November 20, 2006 assignment of the mortgage to BNY ineffective. (*See, e.g.*, First Am. Compl. ¶ 28).

On December 3, 2007, BNY completed a foreclosure sale of the property. (First. Am. Compl. ¶ 24). However, at some point, the foreclosure appears to have been rescinded. (*Id*. ¶ 26).

On October 21, 2008, MERS and BNY executed a confirmatory assignment of the mortgage. (*See* First Am. Compl. ¶¶ 26, 58 (referring to the confirmatory assignment); Defs. Ex. B at 1). That assignment stated that the effective date of the assignment to BNY was October 10, 2006. (*Id.*). There is also a third assignment of the mortgage from MERS to BNY that appears the same as the confirmatory assignment of mortgage, except that, among other items, the October 10, 2006 date has been crossed out and handwritten instead as January 25, 2008. (First Am. Compl. ¶¶ 26, 58; Compl., Ex. 8 at 1). Tiffany Skaife, the assistant secretary of MERS, signed the third assignment. (*Id.*). It was notarized by Robinson, who swore that Skaife personally appeared before her on January 25, 2008. (*Id.*; *see also* First Am. Compl. ¶ 60). The complaint alleges that Skaife crossed out the date on the assignment and added in the date of

January 25, 2008.  (First Am. Compl. ¶¶ 45, 60).

At some point, SPS became the servicer of the mortgage.  (*Id.* ¶ 85).  On April 26, 2017, SPS sent Jones a mortgage statement stating that he had defaulted on his loan and that his account had been accelerated.  (*Id.* ¶ 30; Defs. Ex. C at 1).  On April 9, 2018, following that notice, BNY foreclosed on the property.  (*Id.* ¶ 37).

Paragraph 19 of the mortgage addresses the borrower's right to reinstate after acceleration.  As relevant here, it states:

> Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before the sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Defendant's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.

(Compl., Ex. 1, ¶ 19).

Paragraph 22 of the mortgage addresses acceleration and remedies.  (Compl., Ex. 1, ¶ 22).  As relevant here, it states that the "Lender shall give notice" of a default and:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law . . . .

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, [i]n the manner provided by applicable law.  Lender shall publish the notice of sale, and the Property shall be sold in a manner prescribed by applicable law.

(*Id.*).

On May 9, 2019, Jones filed a complaint in this Court against defendants Dolan Connly, P.C.; Orlans, P.C.; BNY; SPS; and various attorneys and employees of those firms.  (*Jones v. Dolan Connly P.C.*, 19-cv-11076-FDS, Dkt No. 1).  On December 16, 2019, that action was dismissed without prejudice.  (*Id.*, Dkt. No. 56 at 1).

Jones filed the complaint in this action on April 24, 2020, and an amended complaint on July 27, 2020.  (Compl.; Dkt No. 14, Am. Compl.).  On July 30, 2020, he filed a second amended complaint.  (First Am. Compl.).[3]  Defendants BNY and SPS have moved to dismiss that complaint.

The amended complaint alleges that the 2018 foreclosure was void because it failed to comply with (1) the statutory power of sale in Mass. Gen. Laws ch. 183, § 21 (Count One); (2) certain notice requirements pursuant to Mass. Gen. Laws ch. 244, § 15A (Count Two); and (3) paragraph 19 of the mortgage agreement (Count Four).  It further alleges that several of defendants' actions in connection with the 2007 and 2018 foreclosures violated Mass. Gen. Laws ch. 93A (Count Three).

## II.     Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

---

[3] Jones also filed a motion requesting that the Court take judicial notice of (1) certain quotes from various decisions by other federal and state courts and (2) certain statements in the PSA, the assignment signed by Robinson, the Form 15, and the allonge to the note and the endorsement of the note.  (Dkt. No. 26).

A court may take judicial notice of any fact at the motion to dismiss stage that is "not subject to reasonable dispute" because that fact is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666 (D. Mass. 2016) (quoting Fed. R. Evid. 201(d)) (internal quotation mark omitted).  Thus, a court may take judicial notice of a "decision in another court," but not of "fact[s] within th[at] decision," unless of course that fact meets the requirements of Fed. R. Evid. 201(d).  *Id.*

The motion requests in part that the Court take notice of facts within the decisions of other courts, and the motion is therefore denied as to his first request.  As to his request that the Court take judicial notice of certain statements in various documents, those statements are not "adjudicative facts" susceptible to judicial notice, and his motion is therefore also denied as to his second request.  The Court notes, however, that, as discussed, the Court will consider certain of those documents in accordance with the legal standard for motions to dismiss.

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted). In making that assessment, the court may consider documents attached to the complaint as well as the complaint itself. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008). Although uncommon, a plaintiff "may plead [herself] out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992); *see Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *10 (D. Mass. Mar. 22, 2016) ("When a document attached to a complaint contradicts an allegation in the complaint, the document trumps the allegation.").

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints are accorded an "extra degree of solicitude," *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991), they still must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*,

7

851 F.2d 513, 515 (1st Cir. 1998).

III.     **Analysis**[4]

A.        **Count One:  Violations of Mass. Gen. Laws ch. 183, § 21**

Count One alleges that the foreclosure is void because defendants violated the statutory

power of sale set forth in Mass. Gen. Laws ch. 183, § 21.

Jones first alleges that defendants violated the statutory power of sale because the terms

of his mortgage required the lender to send any notice of default, but instead, SPS, the servicer of

the mortgage, sent him the relevant notice.  (First Am. Compl. ¶ 85).

The statutory power of sale in Mass. Gen. Laws ch. 183, § 21 requires compliance with

both "the terms of the mortgage" and with "the statutes relating to the foreclosure of mortgages

by the exercise of a power of sale."  *Pinti v. Emigrant Mortg. Co., Inc.*, 472 Mass. 226, 232

(2015).  Here, the issue is the "terms of the mortgage," and specifically, paragraph 22 of the

mortgage.  In *Pinti*, the Massachusetts Supreme Judicial Court held that failing to comply with

the terms of the notice of default required by paragraph 22 of a mortgage renders the foreclosure

sale void.  *Id.* at 240.  The *Pinti* rule applies to "a[ny] mortgage containing paragraph 22 or its

equivalent [] for which the notice of default required by paragraph 22 is sent after the date of

[*Pinti*]"—that is, June 25, 2013.  *Id.* at 243.

Jones contends that paragraph 22 requires the lender to send the notice of default, rather

than the servicer, and relies on *Paiva v. Bank of N.Y. Mellon*, 120 F. Supp. 3d 7 (D. Mass. 2015)

in support.  *Id.* at 10 ("The language of paragraph 22 is clear and unequivocal as to who must

give the required notice of default to the borrower:  'Lender' must do so.").  But *Paiva* is not in

---

[4] Counts One and Three are alleged against defendants BNY, SPS, and Robinson; Count Two is alleged against defendant BNY; and Count Four is alleged against defendants BNY and SPS.  Defendant Robinson has not moved to dismiss, and therefore, in considering Counts One and Three, the Court will not address whether the allegations against her state a claim.

accord with most cases in this district.  *See Anderson v. Nationstar Mortgage, LLC*, 172 F. Supp. 3d 371, 375-76 (D. Mass. 2016) (collecting cases and noting that *Paiva* stands in contrast).  For example, in *Anderson*, a court examined an identical paragraph to the paragraph at issue here, and explained that that paragraph was not violated merely because a loan servicer had sent the relevant default notice.  *Id.* at 374, 376.  It reasoned that "[p]aragraph 22 does not require the lender to personally send the default notice . . . . [because] a plain reading of the mortgage authorized the servicer to act on behalf of the lender."  *Id.* at 376.

Here, SPS was the mortgage servicer of BNY and thus was authorized to act on its behalf.  A corporation can only act through agents, whether the agent is human or another entity. Accordingly, the complaint fails to state a claim that defendants violated Mass. Gen. Laws ch. 183, § 21 because SPS sent the notice of default.

The complaint further alleges that "BNY did not posse[ss] the promissory note underlying the mortgage when the foreclosures occurred on or about April 9, 2018."  (First Am. Compl. ¶ 37).[5]  Under Massachusetts law, "[o]ne of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose."  *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 647 (2011).  "[O]nly 'the mortgagee or his executors, administrators, successors or assigns' can exercise a statutory power of sale . . . and foreclose without prior

---

[5] Jones did not tie that allegation to any specific count, but the Court will nevertheless consider whether it states a claim for a violation of Mass. Gen. Laws ch. 183, § 21.

As noted, it is not entirely clear whether he also alleges that the assignments of the mortgage to BNY were ineffective, and therefore, that BNY also did not hold the mortgage as of the 2018 foreclosure.  But in any event, the documents attached to or referenced by the complaint contradict that assertion.  The first assignment of the mortgage to BNY was signed by Amanda Farrar, the assistant vice president of the assignor, MERS, on November 20, 2006. (Compl. Ex. 6, at 1).  Farrar did not fill in the date on the line above her signature, but a notary swore that Farrar personally appeared before her and signed the assignment on November 20, 2006.  (*Id.*).  Farrar had authority to assign the mortgage for MERS pursuant to Mass. Gen. Laws ch. 183, § 54B.  *Id.* ("[An] . . . assignment of mortgage . . . if executed before a notary public . . . by a person purporting to hold the position of [] vice president . . . including assistant to any such office or position, of the entity holding such mortgage . . . shall be binding upon such entity . . . .").  Thus, the assignment of the mortgage to BNY was effective as of November 20, 2006.

9

judicial authorization."  *Mills v. U.S. Bank, NA*, 753 F.3d 47, 50 (1st Cir. 2014) (citing Mass.

Gen. Laws ch. 183, § 21); *accord Ibanez*, 458 Mass at 646.

      A mortgagee has the authority to exercise the power of sale only if it was the assignee of

the mortgage at the time of the notice of sale and the subsequent foreclosure sale.  *Ibanez*, 458

Mass. at 648.  However, for foreclosure sales occurring after June 22, 2012, simply holding the

mortgage is necessary, but not sufficient, to exercise a power of sale; a mortgagee must also hold

the promissory note or act as the authorized agent of the note holder.  *Eaton v. Federal Nat'l

Mortg. Ass'n*, 462 Mass. 569, 582-84 (2012).

      It is clear from the PSA and the November 20, 2006 assignment that BNY at one point

held both the note and the mortgage.[6]  Moreover, Jones has provided no specific factual

allegations to support the assertion that "BNY did not posse[ss] the promissory note underlying

the mortgage when the foreclosures occurred on or about April 9, 2018."  Therefore, it is entirely

conclusory, and the Court need not assume it is true.  *Iqbal*, 556 U.S. at 681 ("[T]he allegations

are conclusory and not entitled to be assumed true.").

      Moreover, defendants attached to their supporting memorandum an affidavit pursuant

to Mass. Gen. Laws ch. 244, §§ 35B and 35C to which a document control officer of SPS

attested on September 6, 2017, and that was recorded with the Registry of Deeds of Norfolk

County on September 13, 2017.  (Defs. Ex. D; *see also* First Am. Compl. ¶ 30 (referring to the

affidavit)).  That affidavit attests that, as of September 6, 2017, "[BNY was] the holder of the

---

[6] As noted, contrary to Jones's allegations, the November 20, 2006 assignment of the mortgage was effective.  In addition, the June 22, 2004 allonge to the note conveyed Optima's interest in the mortgage note to Countrywide Document Custody Services, which endorsed the note to Countrywide Home Loans, Inc.  On September 28, 2004, Countrywide Home Loans, Inc. entered into a pooling and servicing agreement with several other banks, and sold certain loans to CWABS, Inc. Asset-Backed Certificates, Series 2004-7, a securitized trust.  BNY was the trustee of CWABS, and the complaint alleges that Jones's note was transferred to BNY as part of that agreement.  (First Am. Compl. ¶ 73).

promissory note secured by [Jones's] mortgage."  (Defs. Ex. D).

An affidavit of that nature is considered proof that the entity has authority to foreclose. *Eaton*, 462 Mass. at 589 n.28 (noting that "a foreclosing mortgage holder . . . may establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale by filing an affidavit in the appropriate registry of deeds"); *see McAllister v. Countrywide Home Loans, Inc.*, 2017 WL 1173925, at *13 (D. Mass. Mar. 29, 2017) (granting motion to dismiss and rejecting conclusory allegations that defendant did not hold the mortgage note on the basis of a recorded §§ 35B and 35C affidavit).  And at least one court in this district has determined that a §§ 35B and 35C affidavit is an official public document that can be considered on a motion to dismiss.  *See Sokoloski v. Wells Fargo Bank, N.A.*, 2018 WL 6704868, at *6 (D. Mass. Oct. 26, 2018) (finding that a §§ 35B and 35C affidavit is an official public record, and therefore considering it on a 12(b)(6) motion to dismiss); *see also O'Brien v. Wilmington Trust Nat'l Assoc. as Trustee to Citibank, N.A.*, 2020 WL 7024875, at *7 (D. Mass. Nov. 30, 2020) (finding that a §§ 35B and 35C affidavit is an official public record and considering it on a 12(c) motion for judgment on the pleadings); *Benjamin v. Fremont Inv. & Loan*, 2018 WL 4017595, at *2 (D. Mass. Aug. 22, 2018) (finding that an "Affidavit Regarding Note Secured by Mortgage Being Foreclosed" is an official public document and considering it on a 12(b)(6) motion to dismiss).

Accordingly, the Court will consider the §§ 35B and 35C affidavit in deciding BNY and SPS's motion to dismiss.  That affidavit clearly contradicts Jones's allegation, and "[w]hen [a] document[] contradict[s] an allegation in the complaint, the document trumps the allegation." *Lowenstern v. Residential Credit Sols.* 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013).

In summary, Jones's conclusory allegation that BNY did not possess the note as of the 2018 foreclosure is insufficient under *Iqbal*, and is contradicted by the §§ 35B and 35C affidavit

in this case.  In addition, paragraph 22 of the mortgage was not violated because SPS sent the notice of default.  Accordingly, Count One fails to state a claim that the foreclosure was void pursuant to Mass. Gen. Laws. ch. 183, § 21.

      **B.**        <u>**Count Two: Violations of Mass. Gen. Laws ch. 244, § 15A**</u>

Count Two alleges that the 2018 foreclosure was void because the notification by BNY to the Town of Stoughton pursuant to Mass. Gen.  Laws ch. 244, § 15A was purportedly untimely.

That section provides as follows:

> A mortgagee taking possession of mortgaged premises prior to foreclosure or a mortgagee conveying title to mortgaged premises pursuant to the provisions of this chapter shall, within thirty days of taking possession or conveying title, notify all residential tenants of said premises, and the office of the assessor or collector of taxes of the municipality in which the premises are located and any persons, companies, districts, commissions or other entities of any kind which provide water or sewer service to the premises, of said taking possession or conveying title.

Mass. Gen. Laws ch. 244, § 15A.

As noted, as a general matter, "one who sells under a power [of sale] must follow strictly its terms" and the relevant foreclosure statutes or else "the sale is wholly void."  *Ibanez*, 458 Mass. at 646-48 (2011); *see also Pinti*, 472 Mass. at 240 (foreclosing lender must "comply strictly" with both the "terms of the mortgage" governing the power of sale and the statutes appearing at Mass. Gen. Laws ch. 244, §§ 11-17C that concern the "process and mechanics of the foreclosure sale itself").  But such strict compliance by a foreclosing party is required only for statutes that concern the actual foreclosure sale itself.  *Turra v. Deutsche Bank Trust Company Americas*, 476 Mass. 1020, 1021 (2017) ("In other words, there are certain statutory provisions with which the mortgagee must comply—'the statutes relating to . . . foreclosure . . . by the exercise of a power of sale'—*before* it may foreclose. Those are the types of provisions that our earlier cases contemplate . . . .") (emphasis added).  Thus, a technical

failure to comply literally with a statute that does not regulate the actual foreclosure is not a basis for a claim for wrongful foreclosure.  *See id.* (holding that failure to comply with post-foreclosure notice requirement in ch. 244, § 15A did not render the foreclosure void).[7]

Here, the complaint alleges that "BNY did not make the required notification to the Town of Stoughton until more than 4 months after the April 2018 foreclosure sale."  (First Am. Compl. ¶ 92).  But even assuming the truth of that claim, it is a mere technical failure to comply with the statute, and Jones has not alleged any prejudice as a result of the delayed notification.  Moreover, as noted, a technical failure to comply with ch. 244, § 15A does not render the foreclosure sale void because that provision does not regulate the actual foreclosure.

Accordingly, the complaint fails to state a claim that the 2018 foreclosure was void due to any alleged violation of Mass. Gen. Laws ch. 244, § 15A.

## C.   Count Four:  Failure to Comply with Paragraph 19

Count Four alleges that the 2018 foreclosure was void because the notice of default SPS sent purportedly failed to comply with paragraph 19 of the mortgage.[8]  Specifically, Jones alleges that the April 26, 2017 letter was deceptive because it "implied that a reinstatement payment given *fewer* than five days before the sale would reinstate the loan," (First Am. Compl. ¶ 104), by stating that "[he] [could] still avoid foreclosure by paying the total past due amount *before* a foreclosure sale takes place," when, according to him, paragraph 19 has a five-day

---

[7] Furthermore, the SJC has held that strict compliance with foreclosure regulations is more important if the regulation relates to "the mortgagee vis-à-vis the mortgagor" than if it relates to "the foreclosing mortgagee and a third party."  *Id.*  The key inquiry is the "potential for harm" to a mortgagor by a mortgagee's non-compliance.  *Id.*; *see also Payne v. U.S. Bank Nat. Ass'n*, 2013 WL 5757858, at *2 (D. Mass. Oct. 24, 2013) (holding that "minor defect" in notice required by Mass. Gen. Laws ch. 244, § 35A did not prevent foreclosure because *Ibanez* and its progeny only require strict compliance with sections dealing with "statutory power of sale") (citing *Ibanez*, 458 Mass. at 647).

[8] Jones appears to be alleging a second violation of Mass. Gen. Laws 183, § 21 in Count Four, but the Court has kept the names that Jones assigned to each of his counts for clarity.

deadline.   (Defs. Ex. C at 4) (emphasis added).

In *Thompson v. JP Morgan Chase Bank, N.A.*, 486 Mass. 286 (2020), the SJC responded to a certified question that is essentially identical to Jones's contention here:  "Did [a] statement in [a] default and acceleration notice that 'you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place' render the notice inaccurate or deceptive in a manner that renders the subsequent foreclosure sale void under Massachusetts law?"  *Id.* at 38.

The SJC determined that it did not, because—notwithstanding paragraph 19 of the mortgage in question—paragraph 16 of the mortgage stated that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."  *Id.* at 288.  Thus, because Mass. Gen. Laws ch. 244, § 35A provides for a longer time for reinstatement—that is, any time before the foreclosure sale—the notice was not deceptive or misleading.  *Id.*

Paragraph 16 of the mortgage here is identical to paragraph 16 of the mortgage in question in *Thompson*.  (Compl., Ex. 1 ¶ 16).  Thus, the complaint fails to allege that the notice of default here violated paragraph 19 of the mortgage, and accordingly, Count Four fails to state a claim to void the foreclosure.

D. **Count Three:  Unfair and Deceptive Trade Practices Pursuant to Mass. Gen. Laws ch. 93A**

Count Three alleges that defendants' actions in connection with the 2007 and 2018 foreclosures violated Mass. Gen. Laws ch. 93A.  Specifically, it alleges that BNY and SPS violated Mass. Gen. Laws ch. 93A for three reasons:  (1) because of the alleged violation of ch. 244, § 15A; (2) because they did not make a good-faith effort to avoid foreclosure as required by Mass. Gen. Laws. ch. 244, § 35B; and (3) because BNY did not hold the mortgage when it foreclosed on the property in 2007, and did not hold the note when it foreclosed on the property

14

in 2018.

Before bringing suit under Mass. Gen. Laws ch. 93A, § 9, a plaintiff must tender to the defendant a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon." *Id.*, § 9(3).  The statutory notice requirement "is not merely a procedural nicety, but, rather, a prerequisite to suit."  *Rodi v. Southern New England School of Law,* 389 F.3d 5, 19 (1st Cir. 2004) (internal quotation marks omitted).  A failure to send the required demand letter is thus fatal to a claim brought under section 9.  *See, e.g., City of Boston v. Aetna Life Ins. Co.,* 399 Mass. 569, 574 (1987).

Defendants contend that the complaint does not allege that he ever sent a demand letter, and that Count Three should therefore be dismissed on that basis.  In plaintiff's opposition, however, he alleges that he sent a demand letter to BNY and SPS in 2018, but he provides no information as to the contents of that demand.  *Bressel v. Jolicoeur*, 34 Mass. App. Ct. 205, 211 (1993) ("We note, however, that the demand letter makes no reference to this particular act which the plaintiff now relies upon as a violation of c. 93A.  Accordingly, her right to relief on this basis is foreclosed as matter of law.").  He also contends that he was not required to make a demand because defendants do not have assets or a place of business in Massachusetts.  But "a mortgage is an asset within the Commonwealth," and as noted, the PSA and the November 20, 2006 assignment contradict Jones's assertion that the assignments of the mortgage to BNY were ineffective.  *Calautti v. American Home Mortg. Servicing, Inc.*, 2012 WL 5240262, at *5 (Mass. Sup. Ct. 2012).  Thus, Jones was required to make a demand—at least as to BNY—that reasonably described the act or practice relied upon, and Count Three fails to state a claim against BNY on that basis.

Count Three also fails to state a claim against BNY and SPS because it does not allege

deceptive or unfair conduct within the meaning of section 9.  That section prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2.  Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness."  *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994).  Actionable conduct under the statute encompasses "[a]ctions involving fraudulent representations in knowing disregard of the truth," *Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 780 (1986), and "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party."  *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (quoting *Wang Labs., Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 857 (1986)).  "It is not enough in the context of Chapter 93A for [a plaintiff] to allege that [a] defendant[] foreclosed on [his or] her property in violation of Massachusetts foreclosure law.  Something more is required for [a plaintiff] to establish that the violation has an extortionate quality that gives it the rancid flavor[s] of unfairness [and deceptiveness]."  *Jaurez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 281 (1st Cir. 2013) (internal quotations omitted).

As noted, the complaint alleges that three actions by defendants violated Mass. Gen. Laws ch. 93A.  Among other things, it claims that defendants violated Mass. Gen. Laws ch. 244, § 35B.  That section provides, as relevant here, that a "creditor shall not cause publication of notice of a foreclosure sale" upon certain mortgage loans "unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure."  *Id.*

SPS mailed Jones a letter dated April 26, 2017, titled "Right to Request a Modified Mortgage Loan."  (Defs. Ex. C at 8).  That letter explained that Jones could seek a "loan modification or other foreclosure alternative" by "complet[ing] and return[ing] the enclosed

Mortgage Modification Options form."   (Defs. Ex. C at 8).  Jones has not alleged that he did not receive that letter, nor does he allege that he took steps to cure the default before the foreclosure. Moreover, the complaint does not allege anything beyond the supposed violation to show that that violation had the "rancid flavor" of unfairness and deceptiveness required by Mass. Gen. Laws ch. 93A.  *Jaurez*, 708 F.3d at 281.

The complaint also does not state a claim pursuant to Mass. Gen. Laws ch. 93A on the basis that defendants violated ch. 244, § 15A.  First, as noted, a violation of ch. 244, § 15A is not a basis for voiding a foreclosure, and therefore, Count Two does not state a claim.  Thus, Count Two also cannot form the basis of Jones's claim pursuant to Mass. Gen. Laws ch. 93A. *Macoviak v. Chase Home Mortgage Corp.*, 40 Mass. App. Ct. 755, 760 (1996) (holding that where plaintiff's chapter 93A claim was based solely upon an underlying fraud claim, summary judgment on that underlying claim was fatal to the chapter 93A claim).  Moreover, the complaint does not allege anything beyond the supposed violation to show that that violation had the "rancid flavor" of unfairness and deceptiveness required by Mass. Gen. Laws ch. 93A.  *Jaurez*, 708 F.3d at 281.

Finally, the complaint does not state a claim that defendants violated Mass. Gen. Laws ch. 93A on the basis that BNY did not possess the mortgage when it foreclosed in 2007 or did not possess the note when it foreclosed in 2018.  Again, it does not allege anything beyond that supposed violation of Mass. Gen. Laws. ch. 183, § 21 to show that defendants' actions were unfair and deceptive as required by Mass. Gen. Laws ch. 93A.

Furthermore, any claim that defendants' actions in connection with the 2007 foreclosure violated Mass. Gen. Laws ch. 93A is barred by the statute of limitations.[9]  A claim under Chapter

_____

[9] Although defendants have not raised the statute of limitations defense, the Court is empowered to consider the issue *sua sponte*.  *See Cardona Del Toro v. United States*, 1993 WL 7933, at *1 (1st Cir. Jan. 19, 1993)

93A must be brought within four years of the accrual of the cause of action. Mass. Gen. Laws ch. 260, § 5A; *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 404 (2003). Generally, the cause of action accrues at the time of the allegedly unlawful conduct. However, Massachusetts courts apply a discovery rule, and thus, the cause of action does not accrue until "an event or events have occurred that were reasonably likely to put plaintiff on notice that someone may have caused [his or] her injury." *Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 28 (1st Cir. 1993); *see also Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 126 (2007) (holding that the discovery rule applies to Chapter 93A claims).

The complaint alleges that BNY did not have a valid mortgage when it foreclosed on Jones's property on December 3, 2007, which was approximately 13 years ago. But Jones's complaint alleges that, at least by March 13, 2008 (and perhaps sooner), he knew that BNY might not have a valid assignment. (*See* First Am. Compl. ¶ 26 ("On[] or about March 13, 2008, the defendants own attorney conceded in Stoughton District [C]ourt that . . defendant BNY relied on 4 assignments, 2 which were [] blank, one assignment undated but notarized on November 20, 2006, 14 days after BNY filed a [c]omplaint to foreclose . . . ."); *see also id.* ¶¶ 22-23 (implying that Jones may have known even earlier, as of August 8, 2007)).

In summary, the complaint fails to state a claim pursuant to Mass. Gen. Laws. ch. 93A, §

---

("[N]ot only is such a waiver [of a limitations defense] inapplicable to the power of the court to dismiss a claim on its own motion, but the mandate of Fed. R. Civ. P. 8(c) requiring affirmative defenses to be set forth in a responsive pleading does not apply to a motion to dismiss.") (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (holding that *sua sponte* dismissal of a complaint as frivolous was proper where the complaint "states a claim that appears to have expired under the applicable statute of limitations").

Moreover, claims related to the 2007 foreclosure appear to have been decided previously by a Massachusetts court. *See Jones v. Bank of New York*, 2013 WL 6331595 (Mass. App. Ct. Dec. 6, 2013); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003) ("Even without a motion, 'a court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the res judicata policy of avoiding judicial waste.'") (emphasis added).

9 as to BNY and SPS because the claim is time-barred or fails to allege the "rancid flavor" of unfairness and deceptiveness required by that statute. *Jaurez*, 708 F.3d at 281.  In addition, the complaint also does not allege a claim under Mass. Gen. Laws ch. 93A as to defendant BNY because Jones did not make a proper demand of BNY.

**IV.**   **Conclusion**

For the foregoing reasons, the motion to dismiss of BNY and SPS is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: June 3, 2021

19